585 F.2d 210
 99 L.R.R.M. (BNA) 2586, 20 Fair Empl.Prac.Cas. 473,
17 Empl. Prac. Dec. P 8632, 84 Lab.Cas. P 10,853
 Dan ARCHIE, Plaintiff-Appellant,
v.
CHICAGO TRUCK DRIVERS, HELPERS AND WAREHOUSE WORKERS UNION,
ABC Trans National Transport, Inc., Equal
Employment Opportunity Commission and
Roscoe Jones, Defendants-Appellees.
 No. 77-1799.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 18, 1978.
Decided Sept. 14, 1978.
Rehearing and Rehearing In Banc Denied Nov. 1, 1978.
 
 1
 Sherwin D. Abrams, Chicago, Ill., for plaintiff-appellant.
 
 
 2
 Lawrence L. Summers, Chicago, Ill., Paul L. Glover, Associate Gen. Counsel, Chicago Truck Drivers, Helpers & Warehouse Workers Union, Chicago, Ill., Gary T. Brown, EEOC, Washington, D. C., for defendants-appellees.
 
 
 3
 Before FAIRCHILD and WOOD, Circuit Judges, and REYNOLDS, District Judge.*
 
 
 4
 REYNOLDS, District Judge.
 
 
 5
 This is an appeal from the dismissal with prejudice of plaintiff-appellant Dan Archie's first amended complaint. For the reasons hereinafter stated, we affirm in part and reverse in part.
 
 
 6
 Archie is a black man who was employed as a dock worker by respondent ABC Trans National Transport ("ABC") to load freight onto trucks. He was discharged on January 31, 1975, for allegedly improperly tallying freight. Archie appealed to his union, Chicago Truck Drivers, Helpers and Warehouse Workers Union (the "Union"), which conferred with ABC. ABC agreed to re-employ Archie on condition that he sign a statement agreeing to accept re-employment "with the understanding that in the event of any recurrence of failure to properly check freight, for one year from date of signature, such recurrence will result in the irretrievable termination of my employment." (First Amended Complaint, Exh. 3) Archie returned to work on February 12, 1975, and on June 30, 1975, he was discharged for an error in loading freight.
 
 
 7
 Archie filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The EEOC referred the charge to the Illinois Fair Employment Practices Commission which conducted an investigation of the charge and reported its findings that there was no basis for the charge to the EEOC. The EEOC adopted the findings of the Illinois Commission. The EEOC served a ninety-day notice of right-to-sue on Archie, which notice he claims to have received on August 6, 1976. He then filed with the district court on October 27, 1976, a pro se document entitled "Complaint and Motion for Other Relief." The Court denied his petition for leave to proceed in forma pauperis but did appoint counsel to represent him. On motion, Archie was given leave to file an amended complaint, which he did on November 30, 1976.
 
 
 8
 In the amended complaint Archie asserted a cause of action under the equal employment opportunity provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against his employer and the Union; a cause of action based on breach of the duty of fair representation by the Union; and a cause of action against the EEOC and its acting director Roscoe Jones, arising out of the alleged failure of the EEOC to perform its statutory duty to investigate charges of discrimination filed with it. The Union and the employer moved to dismiss the Title VII aspects of the complaint and the EEOC and Jones moved to dismiss the complaint as to themselves. The district court dismissed the entire complaint with prejudice. Appellant's motion for reconsideration and for leave to file a second amended complaint was also denied.
 
 Four issues are presented on this appeal:
 
 9
 1. With respect to the Title VII claims, whether appellant's complaint was timely filed within the meaning of 42 U.S.C. § 2000e-5(f)(1).
 
 
 10
 2. Whether appellant adequately stated a claim against the Union for breach of its duty of fair representation in violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.
 
 
 11
 3. Whether the appellant stated a claim under the Civil Rights Act of 1866, 42 U.S.C. § 1981.
 
 
 12
 4. Whether the appellant stated a claim against the EEOC and its acting director Roscoe Jones for breach of their alleged statutory duty to investigate appellant's claim of racial discrimination in employment.
 
 
 13
 We will deal with each question separately below.
 
 I.
 
 14
 Section 2000e-5(f)(1) of Title 42 U.S.C. provides in part:
 
 
 15
 " * * * If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, * * * the Commission * * * shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved * * *. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. * * * "
 
 
 16
 Compliance by a complainant with the ninety-day period following the giving of notice for commencement of an action is a jurisdictional prerequisite to suit, and failure to comply with that time limitation will terminate the complainant's cause of action. Harris v. National Tea Company, 454 F.2d 307 (7th Cir. 1971); Choate v. Caterpillar Tractor Company, 402 F.2d 357 (7th Cir. 1968); Terry v. Bridgeport Grain Company, 519 F.2d 806 (7th Cir. 1975).
 
 
 17
 Archie filed his charge with the EEOC against ABC and the Union within 180 days of his discharge from employment by ABC as required by 42 U.S.C. § 2000e-5(f)(1). The EEOC issued its notice of right-to-sue as required by that statute on July 23, 1976, and the certified mail receipt shows that the notice was received by Dorothy Archie, who is appellant's wife, at appellant's home address on July 28, 1976. In an affidavit submitted in opposition to the motions of the defendant-employer and of the defendant-Union to dismiss the complaint, however, Archie asserts that he first became aware of the notice and received it from his wife on August 6, 1976. Thus, an issue is presented as to the date on which the ninety-day period for filing suit commenced to run within the meaning of 42 U.S.C. § 2000e-5(f)(1). If it commenced on the date that Archie's wife received the notice, then the complaint filed on October 27, 1976, was untimely because it was filed ninety-one days after receipt of the notice, see Melendez v. Singer-Friden Corp., 529 F.2d 321 (10th Cir. 1976) (dismissal proper where complaint filed ninety-one days after receipt of notice of right-to-sue), and the Title VII claims were properly dismissed. If, however, the time for filing suit commenced on the date on which Archie claims to have actually received the notice, then the complaint was timely filed and the dismissal was improper.
 
 
 18
 The district court did not consider the issue of date of receipt because it found that Archie's action was not commenced until his first amended complaint was filed on November 30, 1976. For the reasons given below, we disagree and find that the action was commenced on October 27, 1976. Therefore, we must now consider the issue of date of receipt of the notice.
 
 
 19
 The respondents ABC and the Union argue that if the notice of right-to-sue is left with a person of suitable age and discretion who resides at the plaintiff's residence, then the ninety-day period for commencement of a suit should begin to run from the date of receipt by that person. See Krieger v. Republic Van Lines of the Southwest, Inc., 435 F.Supp. 335 (S.D.Texas 1977) (notice received by plaintiff's mother and given by her to plaintiff three days later); Wong v. Bon Marche, 508 F.2d 1249 (9th Cir. 1975) (alleged diligence in acting to present a claim in federal court will not excuse failure to comply with ninety-day limitation). In Krieger, the Court stated at 337:
 
 
 20
 "A rule that the 90-day period does not commence until a date alleged by the plaintiff to be that of actual receipt would result in the anomaly of a jurisdictional filing deadline being subject to extension at will by any plaintiff willing to testify that he did not actually receive his suit letter until some time after the date indicated by the only objective evidence available, namely, the receipt for certified mail signed at the time of delivery. Such a construction of the statute is completely unwarranted. Rule 4(d)(1) of the Federal Rules of Civil Procedure provides guidance for this situation. If the suit letter is left with and signed for by a person of suitable age and discretion who resides at plaintiff's dwelling, then the 90-day period begins to run from the date of receipt by that person, unless plaintiff received actual notice at such a late date as to prejudice plaintiff in trying to timely file suit."
 
 
 21
 Rule 4(d)(1), however, provides expressly that a summons and complaint may be served on an individual (and the period for answering will thus begin to run) by leaving copies thereof with some person of suitable age and discretion at the individual's usual place of abode. Section 2000e-5(f)(1), 42 U.S.C., contains no such provision. Thus, we must determine, in the absence of an explicit congressional directive, what was meant by the phrase "the giving of * * * notice * * * " as used in that statute.
 
 
 22
 It is clearly the rule that the "giving of * * * notice" language in 42 U.S.C. § 2000e-5(f)(1) refers not to the date on which the EEOC mails notice of right-to-sue to the complainant, but rather at a minimum to the date on which such notice is delivered to the address to which it is mailed. Harris v. National Tea Company, 454 F.2d 307 (7th Cir. 1971). Appellant cites a number of cases which he claims further support an interpretation of the "giving of * * * notice" language as referring to the date of actual rather than constructive receipt. With the exception of Franks v. Bowman Transportation Company, 495 F.2d 398 (5th Cir. 1974), rev'd on other grounds, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), none of the cases are really on point.
 
 
 23
 In Harris, supra, the notice was received by the plaintiff herself, and thus the case does not involve the issue of whether or not constructive receipt would have provided sufficient notice. Similarly Plunkett v. Roadway Express, Inc., 504 F.2d 417 (10th Cir. 1974), and Marshall v. Electric Hose and Rubber Company, 65 F.R.D. 599 (D.Del.1974) decide only that the ninety-day period runs from the date of receipt and not from the date of mailing by the EEOC. In Goodman v. City Products Corporation, Ben Franklin Division, 425 F.2d 702 (6th Cir. 1970), the Court found at page 704 that "there is no allegation or showing in the record of circumstances justifying a tolling of the statute (of limitation) on recognized equitable principles," and therefore it did not decide what, if any, considerations might justify such a tolling. Only in Franks v. Bowman Transportation Company, supra, did the Court squarely hold that the doctrine of constructive receipt does not apply to the notification procedure in Title VII. We note, however, that in that case the right-to-sue letter was received by plaintiff's nine-year-old nephew who subsequently lost it, and therefore the case is distinguishable on its facts from this action.
 
 
 24
 The Supreme Court has stated in Kavanagh v. Noble, 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1947), that statutory time limitations for filing suit
 
 
 25
 " * * * are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary. Rosenman v. United States, 323 U.S. 658, 661 (65 S.Ct. 536, 538, 89 L.Ed. 535). Remedies for resulting inequities are to be provided by Congress, not the courts."
 
 
 26
 Nevertheless, it is for the courts to interpret the provisions for limitation on suits which Congress has seen fit to impose. Defendants would have us find that the establishment of a date certain for commencement of the ninety-day period, as evidenced by the certified mail receipt indicating delivery of the notice to the plaintiff's place of residence, comports with the congressional intent to cut off claims under Title VII after passage of the ninety-day period. On the other hand, Congress saw fit in 1972 to extend the period for commencing suit under Title VII from thirty to ninety days. P.L. 92-261, § 14, 86 Stat. 113 (1972). While the legislative history of this portion of the 1972 amendment is not illuminating, see 118 Cong.Rec. 7166 et seq. (1972) and Senate Committee on Labor & Public Welfare, Legislative History of the Equal Employment Opportunity Act of 1972, 92d Cong., 2d Session, at 1847 (1972), it is logical to assume that the extension was a remedy for the "perceived inequities" of the shorter thirty-day limit. It indicates, in our opinion, the concern of Congress that a claimant under Title VII have a sufficient, albeit limited, period in which to commence an action. Were we to read the doctrine of constructive receipt into the language of 42 U.S.C. § 2000e-5(f) (1), we would be "condition(ing) a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out in the statute." Franks v. Bowman Transportation Company, supra, at 404. We agree with the reasoning of that court as set out at 404 of the opinion:
 
 
 27
 "We do not deal here with service of process or receipt of an offer or acceptance to make a contract, but with the interpretation of Title VII. The courts have consistently construed the Act liberally to effectuate its remedial purpose, and we think this purpose would be poorly served by the application of a 'constructive receipt' doctrine to the notification procedure. More narrowly, the purpose of the statutory notification, which is 'to provide a formal notification to the claimant that his administrative remedies, with the Commission have been exhausted,' Beverly v. Lone Star Lead Construction Corp., 5th Cir. 1971, 437 F.2d 1136, and to inform him that the thirty-day * period has begun to run, has not been accomplished unless the claimant is actually aware of the suit letter. In terms of the policy behind limitations periods generally, the claimant can hardly be said to have slept on his rights if he allowed the thirty-day period to expire in ignorance of His right to sue."
 
 
 28
 Finally, respondents' concern that our interpretation of 42 U.S.C. § 2000e-5(f)(1) will result in "the anomaly of a jurisdictional deadline being subject to extension at will by" any plaintiff, Krieger v. Republic Van Lines of the Southwest, Inc., supra, is absurd. The EEOC could itself prevent dispute by authorizing delivery of such notices only to the named recipients. If it does not, then, should the need arise, the district courts are well able to undertake the duty of fact-finding with regard to the date of actual receipt of notice by a plaintiff. Therefore, we hold that the ninety-day period of limitation set forth in 42 U.S.C. § 2000e-5(f)(1) begins to run on the date on which a claimant actually receives from the EEOC his notice of right-to-sue.
 
 
 29
 For purposes of the remainder of this decision, and because respondents did not challenge Archie's claimed date of receipt of the notice of right-to-sue in the district court before this action was dismissed, we will assume that Archie did in fact receive the notice on August 6, 1976. We do not thereby intend to foreclose the respondents from challenging the claimed date of receipt on remand of this action to the district court. If they do choose to challenge the date, they will be entitled to an evidentiary hearing and a finding of fact on the matter of the date of receipt.
 
 
 30
 As stated earlier, we also hold that the document which Archie filed on October 27, 1976, was a complaint, and in consequence, since his complaint was filed within ninety days of the actual receipt by him of the right-to-sue notice, that his action was timely begun under 42 U.S.C. § 2000e-5(f)(1).
 
 
 31
 Archie filed a form document supplied by the clerk of the United States District Court entitled "COMPLAINT AND MOTION FOR OTHER RELIEF." Paragraph 1 of the form states: "This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. Sec. 2000e-5. Equitable and other relief are also sought under 42 U.S.C. 2000e-5(g)." The remainder of the form has various blank spaces and multiple choice provisions to be completed by the applicant. Archie circled "B. Termination of your employment" under paragraph 9 entitled "The acts complained of by you, in this suit, concern:", and under paragraph 10 entitled "Defendant's conduct is discriminatory with respect to which of the following:", he circled "A. Your race" and "B. Your color." In addition to filling out the form complaint, Archie signed a waiver of the issuance of summons on the complaint I have filed today." The printed waiver also provided:
 
 
 32
 " * * * This is to direct the Clerk not to issue summons until either the Court or I direct him to do so, except should an amended complaint be filed, he shall forthwith issue summonses."
 
 
 33
 Relying primarily on Harris v. National Tea Company, 454 F.2d 307 (7th Cir. 1971), the respondents ABC and the Union argue that the document filed by Archie on October 27, 1976, was not a complaint. They stress three points: (1) in the prayer for relief portion of the form, Archie circled only the request for appointment of counsel and did not circle the request for monetary or other relief; (2) he failed to attach to the form a copy of his claim to the EEOC as requested in paragraph 12; (3) respondents argue that Archie's request for appointment of counsel in conjunction with his waiver of issuance of a summons indicates that he was merely applying for appointment of counsel and intended to rely on counsel, when appointed, to file a complaint.
 
 
 34
 We start with the proposition that procedural requirements are to be liberally interpreted in layman-initiated proceedings under Title VII. Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Rule 8 of the Federal Rules of Civil Procedure requires that a pleading shall contain a short statement of the grounds upon which the court's jurisdiction depends, a short statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled. The jurisdictional allegations are set forth on the printed form which Archie used. With regard to the statement of his claim, the respondents assert that Archie's failure to attach the copy of the EEOC complaint was a fatal deficiency because without it, there are insufficient facts set forth in the complaint to state a claim. We disagree. Archie alleged that he was terminated from employment because of racial discrimination, he set forth the date of the alleged discriminatory act, and he named both his employer and the respondent Union in his complaint. The purpose of a complaint is to inform the opposing party of the grounds upon which the plaintiff's claim rests. Sundstrand Corp. v. Standard Kollsman Industries, Inc., 488 F.2d 807 (7th Cir. 1973). Following the liberal approach to procedural requirements which courts are bound to use in Title VII actions, Archie's complaint provided sufficient notice to the respondents of the basis for his claims.
 
 
 35
 As for respondents' assertion that Archie failed to include a prayer for other relief than the appointment of counsel, we note first, that paragraph 1 of the complaint stated in part that "(e)quitable and other relief are also sought under 42 U.S.C. 2000e-5(g)," and thus the formal prayer for relief at the end of the complaint was redundant. More important, however, the form which was provided to Archie by the court purported on its face to be a complaint form for actions brought under Title VII. Archie filled in all of the blank spaces on the form, and where multiple choices were offered, he circled one or more of the choices in each case.
 
 
 36
 To hold that an applicant's rights under Title VII depend on the fortuitous circumstance of whether or not he circles the proper letter on a printed form would be clearly unjust. We have stated above that a claimant cannot be held to have "slept on his rights" if he allows the ninety-day period for filing suit under Title VII to expire in ignorance of his right to sue. We now hold that a claimant also cannot be held to have slept on his rights when he files a Title VII complaint on a form provided to him by the court which purports on its face to be a complaint, when in fact he provides sufficient information on the form to apprise the defendants of the claims made against them, and when his only fault is in failing to circle an appropriate item on the form. We do not believe that rights under Title VII were intended to depend on such technicalities of pleading.
 
 
 37
 Respondents' final point regarding the form for waiver of issuance of summons is adequately disposed of by District Judge Maravitz's opinion in Crook v. Penn Central Transportation Company, 427 F.Supp. 956 (N.D.Ill.1977), at 961-962:
 
 
 38
 " * * * Pursuant to local court practice, Pro se plaintiffs in EEOC related cases are requested to sign a 'Waiver of Issuance of Summons' which directs the Clerk of the Court not to issue summons until either plaintiff or the Court directs him to do so; except that if an amended complaint is filed, summons is directed to be issued immediately. This practice is apparently designed to filter out those cases which on their face lack merit so as not to require the Marshal to serve summonses for frivolous lawsuits.
 
 
 39
 "While we question the desirability of requesting Pro se plaintiffs to sign such waivers particularly in light of the lengthy delay in notice to defendants which may result we cannot fault plaintiff for following the instruction and direction of the Clerk's office. We therefore hold that plaintiff's filing before this Court was timely."
 
 
 40
 Harris v. National Tea Company, supra, is not inconsistent with our decision herein. In that case the plaintiff filed a pro se petition for appointment of counsel within the thirty-day period then provided for suit under Title VII. In the petition she neither named the defendant nor mentioned any claim of discrimination. Following the appointment of counsel, she waited forty-seven days to file a complaint. We held that the petition for appointment of counsel did not constitute a complaint, and thus we affirmed the dismissal of her action for failure of the plaintiff to comply with the jurisdictional prerequisites to suit. In this case Archie filed within the requisite time period a complaint which, while technically imperfect, was nevertheless sufficient in our view to satisfy the requirements of 42 U.S.C. § 2000e-5(f)(1) and of Rule 8 of the Federal Rules of Civil Procedure.
 
 II.
 
 41
 Because this action will be remanded to the district court for further proceedings, it is unnecessary to consider the second issue raised in this appeal, which issue is whether or not the first amended complaint stated a claim for relief under the Civil Rights Act of 1866, 42 U.S.C. § 1981. The point was not previously raised at the district court level, but on remand Archie may of course seek leave to amend his complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure to expressly include a claim under 42 U.S.C. § 1981.[1]
 
 III.
 
 42
 In paragraphs 13, 14, and 15 of his first amended complaint, Archie alleged that subsequent to his initial discharge by ABC for improperly loading freight:
 
 
 43
 "13. The UNION arbitrarily, capriciously and without just or reasonable cause failed fairly to represent the plaintiff, but rather the UNION and the COMPANY required the plaintiff to sign a statement asking for reinstatement to employment upon certain conditions, a copy of which statement is attached hereto as Exhibit 3 and incorporated herein by reference.
 
 
 44
 "14. The statement identified as Exhibit 3 provided in part as follows:
 
 
 45
 'In the event of any recurrence of failure to properly check freight, for one year from date of signature, such recurrence will result in the irretrievable termination of my employment.'
 
 
 46
 "15. The UNION and the COMPANY know and knew that it is virtually impossible for a dock worker to work for a period of one (1) year without making any error whatsoever in checking freight, and such provision is not imposed as a condition of employment of white employees of the COMPANY."
 
 
 47
 Archie further alleged that after he was rehired and again discharged:
 
 
 48
 "20. Immediately after his discharge on June 30, 1975, the plaintiff sought to invoke the grievance procedures established by the Collective Bargaining Agreement, but the UNION arbitrarily, capriciously and without just or reasonable cause failed and refused properly to represent the plaintiff and refused to make any attempt whatsoever to process plaintiff's grievance. A copy of the letter setting forth the UNION's refusal to represent the plaintiff is attached hereto as Exhibit 5 and incorporated herein by reference."
 
 
 49
 Although the Union did not move to dismiss the allegations of the complaint based on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185,[2] on March 28, 1977, the district court dismissed the entire complaint with prejudice, stating in part:
 
 
 50
 " * * * As for plaintiff's action under Section 301 of the Labor Management Relations Act, the court has examined the First Amended Complaint carefully and concludes that plaintiff's allegations that the Union failed to represent him fairly do not set forth a claim upon which relief can be granted under Section 310 (sic). In order to state a claim of unfair representation, the complaint must contain more than conclusory statements alleging a failure of the Union to accord the plaintiff fair representation: in particular plaintiff must make a showing that the conduct of which he complains was motivated by bad faith. See, e. g., Augspurger v. Brotherhood of Locomotive Engineers, 510 F.2d 853, 859 (8th Cir. 1975) and cases cited therein. This he has failed to do. Hence, his allegations that the Union failed to represent him fairly do not set forth a claim upon which relief can be granted."
 
 
 51
 On June 3, 1977, the district court denied Archie's motion for reconsideration of the dismissal.
 
 
 52
 The appellant argues that the district court erred in two respects: first, in finding that his complaint did no more than set forth conclusory allegations, and second, in holding that a plaintiff must make a showing that the conduct of which he complains was motivated by bad faith.
 
 
 53
 The second point may be easily disposed of. In Barton Brands, Ltd. v. N. L. R. B., 529 F.2d 793 (7th Cir. 1976), we held at 799:
 
 
 54
 " * * * (P)roof of good faith on the part of a union is not a defense to a charge based on the duty of fair representation since arbitrary conduct without evidence of bad faith has been held by this Circuit to constitute a breach of the duty. * * * "
 
 
 55
 See also Orphan v. Furnace Construction Corp., 466 F.2d 795 (7th Cir. 1972); Moore v. Sunbeam Corporation, 459 F.2d 811 (7th Cir. 1972). These cases are in accord with Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), wherein the Court held that a breach by a union of its duty of fair representation occurs when its conduct is "arbitrary, discriminatory, Or in bad faith." (Emphasis added.) 386 U.S. at 190, 87 S.Ct. at 916. Augspurger v. Brotherhood of Locomotive Engineers, supra, relied upon by the district court, is not to the contrary. The Court therein held that certain neglectful conduct by the union did not amount to a breach of its duty of fair representation under the Railway Labor Act, 45 U.S.C. § 151 et seq. because the union acted neither in bad faith nor with discriminatory intent. See also Bond v. Local Union 823, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 521 F.2d 5, 9 (8th Cir. 1975).
 
 
 56
 It is true that a complaint brought pursuant to 29 U.S.C. § 185 is legally insufficient unless the allegations of the complaint contain more than conclusory statements alleging improper representation, i. e., unless they set forth facts showing discriminatory conduct. Williams v. General Foods Corp., 492 F.2d 399, 405 (7th Cir. 1975). See also Slagley v. Illinois Central Railroad Company, 397 F.2d 546 (7th Cir. 1968). In Williams, the complaint asserted only that the defendant-unions failed to protect female employees from certain discriminatory policies and practices of the defendant-company. The Court held that even if the complaint could be read to imply discriminatory denial of representation, it was properly dismissed because the charge was merely conclusory and neither the complaint nor the record evidenced supporting facts showing union discrimination in representation. Similarly, in Slagley the complaint alleged that the defendant-union compelled the defendant-company to deprive the plaintiff of his seniority, which action was arbitrary and capricious and constituted unlawful discrimination toward the plaintiff. The Court upheld dismissal of the complaint, holding that such allegations were "mere conclusions of law" and insufficient to state a claim for breach of the duty of fair representation. See also Balowski v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (UAW), AFL-CIO, 372 F.2d 829 (6th Cir. 1967).
 
 
 57
 The respondents ABC and the Union argue that on the basis of the complaint alone, it is apparent that the Union represented Archie following his initial termination and actually achieved his reinstatement, and further, that it also reviewed the circumstances of his second discharge and then exercised its discretion not to invoke the contractual arbitration procedure to protest his discharge. They claim that therefore "the Union's actions cannot as a matter of law and fact rise to the level of unfair representation or constitute anything more than a representative judgment for which a claim cannot lie." (Brief of defendant-appellee ABC, filed Oct. 13, 1977, at 26.)
 
 
 58
 We disagree. Archie has claimed in his first amended complaint that the Union in effecting his reinstatement required him to sign a statement of conditions of continued re-employment which it knew he would be unable to meet and which was never required of white employees. He has also claimed that the Union arbitrarily failed to represent him following his second discharge. These claims constitute factual allegations sufficient to prevent dismissal of his complaint at this early stage of the proceedings. If Archie can prove his initial allegation, then we believe that he will have sustained his claim that the Union breached its duty of fair representation by acting in a discriminatory manner and, furthermore, that its conduct was directed at him individually. See Balowski v. International Union, supra; Cannon v. Freightways Corp., 524 F.2d 290 (7th Cir. 1975).
 
 
 59
 Respondents rely on Exhibit No. 5 to the first amended complaint to refute Archie's second allegations that the Union "failed and refused properly to represent" him after his second discharge. (Amended Complaint, paragraph 20.) Exhibit No. 5 is a letter from the executive director of the Union to Archie informing him that based on the statement of conditions which he signed, "the Union cannot invoke the arbitration provisions of the Collective Bargaining Agreement in the matter of your discharge of June 30, 1975 * * * ." In Vaca v. Sipes, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967), the Court stated that while an individual employee does not have an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement, " * * * a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion * * * ." The Court further stated at 194, 87 S.Ct. at 919:
 
 
 60
 "In administering the grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances. * * * "
 
 
 61
 Construing the first amended complaint in the light most favorable to Archie, as is required in dealing with a motion to dismiss, Exhibit No. 5 supports the inference that the Union processed Archie's grievance in a perfunctory manner by relying on its action taken with regard to his previous grievance without conducting a second investigation. If the Union acted in violation of its statutory duty in processing Archie's initial grievance it cannot thereafter satisfy its statutory duty by relying on its previous improper activity.IV.
 
 
 62
 The fourth issue raised on appeal is whether or not the district court erred in dismissing Archie's complaint against the EEOC for alleged breach of its statutory duty to investigate the charges which he filed with it. Archie alleged in his complaint that the EEOC referred his charge to the Illinois Fair Employment Practices Commission ("FEPC") for investigation and findings, that on or about July 14, 1976, the FEPC entered a finding that there was a lack of substantial evidence to support his charge, and that:
 
 
 63
 "25. The EEOC failed to make any investigation whatsoever of the charges filed by the plaintiff and of the alleged unlawful employment practices engaged in by the COMPANY, but instead notified the plaintiff of his right to sue * * * ."
 
 
 64
 Archie sought to have the district court issue an order compelling the EEOC and its acting director Roscoe Jones to investigate his charge of unlawful employment practices. The district court dismissed his complaint against the EEOC on March 25, 1977, without setting forth its reasons for so doing, and, also without reasons, thereafter denied his motion for reconsideration.[3]
 
 
 65
 Section 2000e-5(b) of Title 42 U.S.C. provides in part:
 
 
 66
 "(b) Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, * * * alleging that an employer * * * has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge * * * and shall make an investigation thereof. * * * If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. * * *"
 
 
 67
 Section 1601.19b of Title 29 C.F.R. provides in part:
 
 
 68
 "(e) In making a determination as to whether reasonable cause exists, substantial weight shall be accorded final findings and orders made by designated 706 agencies, as listed in § 1601.12(k) pursuant to the requirements of section 706(b), (c), and (d) of title VII. For the purposes of this section, the following definitions shall apply:
 
 
 69
 "(2) 'Substantial weight' shall mean that such full and careful consideration shall be accorded to final findings and orders, as defined above, as is appropriate in light of the facts supporting them, when they meet all of the prerequisites set forth below:
 
 
 70
 "(i) The proceedings were fair and regular; and
 
 
 71
 "(ii) The remedies and relief granted are comparable in scope to the remedies and relief required by Federal law; and
 
 
 72
 "(iii) The final findings and order serve the interest of the effective enforcement of title VII.
 
 
 73
 "Provided, That giving 'substantial weight to final findings and orders' of a '706 Agency' does not include according weight, for purposes of applying Federal law, to that agency's conclusions of law."The Illinois Fair Employment Practices Commission is a "706 Agency" listed in 29 C.F.R. § 1601.12(k). Section 1601.14 of 29 C.F.R. provides in part:
 
 
 74
 "The investigation of a charge shall be made by the Commission. During the course of such investigation, the Commission may utilize the services of State and local agencies which are charged with the administration of fair employment practice laws or appropriate Federal agencies, and, to the extent relevant, may utilize the information gathered by such agencies. * * * "
 
 
 75
 Appellant argues that the EEOC must itself conduct an investigation of a claim and cannot rely solely on findings made by a state employment commission. Respondents EEOC and Jones argue that they have broad discretion with respect to the conduct of investigations of charges filed with the EEOC and can exercise that discretion by adopting the findings of a state commission without further investigation. We agree.
 
 
 76
 Section 2000e-5(b) of Title 42 U.S.C. provides that the EEOC "shall make an investigation (of a charge)" and in so doing shall accord "substantial weight" to findings of state authorities. The statute does not set forth the manner in which the EEOC investigation shall be conducted, nor does it limit the weight which may be accorded to state findings. The regulations interpreting the statute are similarly expansive. Thus, the Commission is to utilize information gathered by state agencies "to the extent relevant." 29 C.F.R. § 1601.14. The determination of the extent of relevance is clearly left to the EEOC. Similarly, under 29 C.F.R. § 1601.19b, "substantial weight" appears to be such weight as the Commission deems "appropriate."
 
 
 77
 Furthermore, while the failure of the EEOC to perform its statutory duties may or may not be grounds for dismissal of a complaint filed in the district court on motion of the defendant, see, e. g., Equal Employment Opportunity Commission v. Raymond Metal Products Company, 385 F.Supp. 907 (D.C.Md.1974); Woodrum v. Abbott Linen Supply Co., 428 F.Supp. 860 (S.D.Ohio 1977) (federal court lacks the power to interfere with the internal administrative procedures of the EEOC); United States v. Sweet Home Central School District, 407 F.Supp. 1362 (W.D.N.Y.1976), the plaintiff's remedy in such a case is to commence suit on his own behalf in the district court, Jefferson v. Peerless Pumps Hydrodynamic Division of FMC Corporation, 456 F.2d 1359 (9th Cir. 1972); Choate v. Caterpillar Tractor Company, 402 F.2d 357 (7th Cir. 1968), wherein he is entitled to a review de novo of his claims. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798-799, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Flowers v. Local No. 6, Laborers International Union of North America (AFL-CIO), 431 F.2d 205 (7th Cir. 1970).
 
 
 78
 This case is, therefore, affirmed in part and reversed in part and remanded to the district court for proceedings consistent with this opinion.
 
 
 79
 HARLINGTON WOOD, Jr., Circuit Judge, concurring in part and dissenting in part.
 
 
 80
 With parts II, III and IV of the majority opinion, I concur, but I must respectfully dissent from so much of Part I as pertains to the interpretation of the Title VII ninety-day jurisdictional prerequisite.
 
 
 81
 I am not as willing as my brethren to so easily deviate from the admonition in Kavanagh v. Noble, 332 U.S. 535, 539, 68 S.Ct. 235, 92 L.Ed.2d 150 (1947), that the judiciary should strictly adhere to statutory time limitations for filing suit. Since the 90-day limitation is recognized as a jurisdictional matter, I do not believe we are free to interpret it into something so flexible and indefinite as to cause it to lose at least some of its jurisdictional purposes. It will now become almost open ended with suits being filed long after the employer could otherwise have reasonably expected the matter to be closed. It is not unreasonable to put some burden on the complaining employee to conform to the time limitation, and also to give the employer some definiteness in the operation of his business. The view of the majority can become at least a cloak for employee negligence in adherence to the time limit. If the 90-day jurisdictional limit comes to be considered a source of hardship, then Congress can, as it has previously with this same time limitation, make the adjustment. 332 U.S. at 534. We should not. In this circuit we have viewed the problem in that light. Harris v. National Tea Co., 454 F.2d 307, 310 (7th Cir. 1971).
 
 
 82
 Archie has not been left without any consideration of his current claim. It had already been considered by his own union, the EEOC and the Illinois Fair Employment Practices Commission and found to be without merit by all of them. Plaintiff's amended complaint shows that Archie's work performance had long been considered unfavorable by his employer. Archie had been given numerous written and verbal warnings. However, with his union's assistance he had been given another, but last chance by the employer. Then when Archie initialed and tallied a shipment intended for Hawaii, but loaded it for New York, the employer terminated his employment in accordance with the prior understanding between them.
 
 
 83
 In Franks v. Bowman Transportation Co., 495 F.2d 398 (5th Cir. 1974), rev'd on other grounds, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), cited by the majority, the problem was a little different than the one we are considering. In that case the plaintiff's nine-year-old nephew was permitted to sign the receipt for the letter which he lost. Plaintiff's claim in that case was that he never did see or know about the letter. After a year he contacted EEOC to inquire as to the status of his case. EEOC obliged by issuing a second letter and plaintiff's subsequent suit was held to be timely as to that second notice.
 
 
 84
 The registered letter was receipted for by Archie's wife at his residence. She could have refused to accept it, but from that moment there were 90 days to do what Archie did not do, go to the clerk's office and fill out a brief form. Archie, assuming the truth of his affidavit, personally received the notice after less than a week of the 90-day limitation had expired. Why Archie apparently did nothing about it for several months until he finally went to the clerk's office and filled out the form just after the expiration of the 90 days is unexplained. We view complaints in these matters with liberality, but even if free to do so with this jurisdictional matter, I see no justification in this case for extending that liberality to make up for what I perceive to be the plaintiff's own lack of diligence, there being no excuse offered.
 
 
 85
 I believe an employer is entitled to a more certain rule and one that does not create a temptation for family perjury which will often be difficult, if not impossible, to reveal. A rule which parallels the rule for service of summons in the most important matters is not unreasonable for either party. The worthy purposes of the legislation are not abused by the judicial recognition and strict application of the definite jurisdictional time limitations provided by Congress.
 
 
 
 *
 The Honorable John W. Reynolds, Chief U. S. District Judge for the Eastern District of Wisconsin, is sitting by designation
 
 
 *
 The time period is now ninety days
 
 
 [1]
 Civil actions under 42 U.S.C. § 1981 are subject to the five-year statute of limitations provided in Ill.Rev.Stats. Ch. 83 § 16 (1967). Waters v. Wisconsin Steel Workers of International Harvester Company, 427 F.2d 476, 488 (7th Cir. 1970). Archie will thus be well within the time limitation if he seeks leave to amend his complaint from the district court
 
 
 [2]
 Section 185 of 29 U.S.C. provides in part:
 "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."
 
 
 [3]
 The respondent EEOC contends that because additional materials in the form of affidavits and exhibits were submitted to the trial court by the various defendants with their motions to dismiss and their answers, the district court treated the motion to dismiss of the EEOC as a motion for summary judgment, and therefore we can consider those materials in making this review. There is no indication in the record, however, that the district court considered such materials in ruling on the motion of the EEOC, nor was the plaintiff given notice that it might do so, and therefore we consider that the district court treated the motion as a motion to dismiss and did not consider materials outside of the pleadings in arriving at its decision. Nor will we consider such materials in this review. See 2A Moore's Federal Practice and Procedure P 12.09(3) (2d ed. 1975)