**Francine M. CRAIG, Appellant,**

v.

**DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Appellee.**

**No. 77–1962.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1978.

Decided Aug. 9, 1978.

---

Elmer C. Jackson, Jr., Kansas City, Kan., for appellant; Cortland E. Berry, Kansas City, Kan., and Clifford M. Spottsville, Kansas City, Mo., on brief.

Richard H. Zehring, Asst. U. S. Atty., Kansas City, Mo., for appellee; Ronald S. Reed, Jr., U. S. Atty. and E. Eugene Harrison, Asst. U. S. Atty., and Paul P. Cacioppo, Regional Atty., Region 7, Dept. of HEW, and James R. Cage, Atty., Kansas City, Kan., on brief.

Before LAY, HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

Francine M. Craig brought this action against the Department of Health, Education and Welfare (HEW) pursuant to Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* The District Court dismissed the claim for lack of jurisdiction. We reverse.

I.

A summary of the facts will highlight the legal issue presented. Francine M. Craig, a black female, was hired as a GS-2 file clerk with the Mid-America Program Center on April 17, 1973. At that time, she was placed on the standard twelve-month probationary work period. On November 25, 1973, Craig was promoted to the position of

a GS-3 mail clerk in the Program Center's mailroom.

On April 5, 1974, twelve days before her probationary period was due to end, Craig was given the option of being terminated or resigning from her position. She chose the latter. Approximately two months later, Craig filed a formal complaint with the Equal Employment Opportunity Commission (EEOC) in which she alleged discrimination on the basis of her race. On September 3, 1975, the EEOC issued a finding of no discrimination. Craig then appealed to the Appeals Review Board which remanded the case for further consideration. The supplemental investigation again resulted in a proposed finding of no discrimination. After this result was transmitted to Craig, she was granted a formal hearing before the Civil Service Commission which was held on March 11, 1977. The Commission determined that her resignation was voluntary. This decision was adopted by HEW.

Craig retained Elmer C. Jackson, Jr., as her attorney sometime before June, 1976. The record reveals that between June and September of that year, there were at least three instances where correspondence relating to Craig's claim noted that Jackson was representing her. A memorandum sent to the Acting Regional Commissioner of HEW for the Social Security Administration by Jackson on September 3, 1976, specifically stated that Jackson was Craig's attorney. The memorandum further listed the identity of Craig's representative as follows:

Elmer C. Jackson, Jr.
Attorney at Law
1314 N. 5th Street
Kansas City, Kansas 66101

In December, 1976, Jackson signed a Social Security Administration form stating that Craig would be requesting a formal hearing.

HEW mailed two identical letters on July 18, 1977, advising Craig of her right to bring a civil action in federal district court. The first letter was sent to Cortland E. Berry.[1] It was sent "return receipt, registered, insured and certified mail" and was addressed as follows:

Mr. Cortland E. Berry
Douglas State Bank Bldg., Suite 207
1314 N. 5th Street
Kansas City, Kansas 66101

The second letter was mailed to Craig, but she never received it. The record does not reveal the mailing address of this letter.

The letter addressed to Berry arrived at Jackson's law office on July 20, 1977. Linda McKenzie, Jackson's secretary, received the letter and signed for it. When Berry returned from an out-of-town trial on July 22 he opened the letter. He assumed that the letter had been received on the date that he opened it, and that he had until August 22 to file an action.[2] He was not informed that the letter had arrived two days earlier.

A complaint was filed on Craig's behalf in United States District Court for the Western District of Missouri on August 22, 1977, thirty-three calendar days after receipt of the letter. The case was dismissed for lack of jurisdiction due to the untimely filing of the action.

## II.

This case presents a question of procedure under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972. 42 U.S.C. § 2000e et seq. Title VII allows an aggrieved federal employee to bring a suit in federal district court within thirty days after "receipt of notice" that his administrative

1. Berry, an attorney, practiced in a town twenty miles outside of Kansas City. While in Kansas City, he used Jackson's offices to receive telephone calls and mail. Berry was also associated with Jackson on some cases including this one in which he appeared for Craig in her hearing before the Civil Service Commission.

2. Had the letter been received on July 22, 1977, as Berry assumed, the thirty calendar days allowed by 42 U.S.C. § 2000e-16(c) for the filing of the suit would have expired on Sunday, August 21, 1977.

remedies have been exhausted.[3] The sole question on appeal is whether the notice to Berry amounted to "receipt of notice" within the meaning of 42 U.S.C. § 2000e-16(c).

The District Court determined that it did, stating that "[i]n this case, the delivery of the letter was to the address furnished to the agency by the plaintiff and was receipted for by an adult employee of the law firm. The date of the receipt of the letter by the attorney's secretary is the crucial date." We disagree.

In *Bell v. Brown,* 181 U.S.App.D.C. 226, 557 F.2d 849 (1977), the Court addressed the question as to the meaning of "receipt of notice" under 42 U.S.C. § 2000e-16(c). On August 28, 1974, the Civil Service Commission mailed two letters in an attempt to inform Bell that he had been denied administrative relief and that he had thirty days from receipt of notice in which to bring an action in federal district court. One letter was sent to Richard W. Cass, an attorney with the firm which had previously represented Bell.[4] The other letter was sent to Bell at his house; but because he was on vacation until September 3, the date of the letter's arrival could not be ascertained.

On October 1, 1974, Bell filed a pro se complaint in the District Court. The action was dismissed as untimely and he appealed. The Court of Appeals reversed, noting initially that "[s]ince the 'receipt of notice,' and not its mailing, is expressly made the event inaugurating the 30-day period, plainly it begins to run only from the time the notice comes into the recipient's hands." *Id.* 181 U.S.App.D.C. at 229, 557 F.2d at 852

(footnote omitted). The Court then considered whether receipt by Bell's attorney was equivalent to receipt by Bell himself. Noting the absence of any express congressional intent, the Court stated:

> [W]here congressional purpose is unclear, courts have traditionally resolved ambiguities in remedial statutes in favor of those whom the legislation was designed to protect. We have heretofore recognized 'that Title VII is remedial in character and should be liberally construed to achieve its purposes'; 'for this reason,' we have observed, 'courts confronted with procedural ambiguities in the statutory framework have, with virtual unanimity, resolved them in favor of the complaining party.' 'That approach,' we have added, 'reflects not only the manifest importance of Title VII rights to complaining parties, but also the broad national commitment to eliminating such discrimination and the importance of private suits in fulfilling that commitment.'

*Id.,* 181 U.S.App.D.C. at 230, 557 F.2d at 853 (footnotes omitted).

▮ In addition, the Court emphasized the fact that the Civil Service Commission has consistently read § 2000e-16(c) as requiring notice directly to the aggrieved federal employee. *Id.,* 181 U.S.App.D.C. at 231, 557 F.2d at 854. Great deference is generally afforded agency interpretations of a statute when that agency is entrusted with the enforcement of it. *Id.,* 181 U.S.App.D.C. at 232, 557 F.2d at 855. *See generally Griggs v. Duke Power Co.,* 401 U.S. 424, 433–434, 91 S.Ct. 849, 28 L.Ed.2d 158

---

**3.** The statute provides that:

[w]ithin thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in * * * [subsec. (a) of this section], or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, * * * an employee * * * if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in * * * [42 U.S.C. § 2000e-5] in which civil action the head of the department, agen-

cy, or unit, as appropriate, shall be the defendant.

42 U.S.C. § 2000e-16(c).

**4.** There is some question as to whether or not Cass was Bell's attorney on the date of the mailings. On October 2, 1973, Cass had informed the hearing examiner that he and another lawyer would be representing Bell and a co-employee at the upcoming hearing. However, by mid-August, 1974, Bell no longer considered Cass his attorney because Cass had informed him that he would be leaving on an extended vacation beginning at the end of August or early September.

(1971); *United States v. City of Chicago,* 400 U.S. 8, 10, 91 S.Ct. 18, 27 L.Ed.2d 9 (1970); *Udall v. Tallman,* 380 U.S. 1, 4, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

The remedial purpose of the statute, together with the consistent administrative interpretation, led the Court to the conclusion that:

> [t]he evident purpose of the notice requirement is to inform that the administrative process has run its course and to admonish that the brief period for instituting a lawsuit is about to commence. Like the Civil Service Commission, we think [§ 2000e-16(c)] contemplates service of the notice on the employee. * * * We share also the position that [§ 2000e-16(c)] additionally requires service on counsel for the employee when so represented as a "practical necessity if the thirty-day filing requirement is not to become an unintended procedural booby-trap."
>
> * * * * * *
>
> [W]e cannot believe that Congress willed the subversion of [§ 2000e-16(c)] by an incompatible invocation of imputed notice. We hold that the 30-day period for filing suit did not begin to run until appellant actually received the Board's decision; and it follows that his suit, brought 28 days later, was timely.

*Bell v. Brown, supra,* 181 U.S.App.D.C. at 234, 557 F.2d at 857 (footnotes omitted).

 We agree with *Bell* that the Equal Employment Opportunity Act is a remedial statute and should be liberally construed. We also agree that weight must be given to the regulations of the Civil Service Commission requiring that notice be given directly to an aggrieved federal employee. We are not prepared to say, however, that there are no circumstances under which notice to a designated representative will meet the requirements of the statute. To the contrary we believe that notice is sufficient if:

(1) A registered or certified letter, or other written notice requiring the recipient to acknowledge receipt therefor, is sent to the employee and the employee personally acknowledges such receipt; or

(2) A registered or certified letter, or other written notice requiring the recipient to acknowledge receipt therefor, is sent to the representative designated by the employee. Such notice must be addressed in accordance with the specific directions of the employee, and receipt must be acknowledged personally by the designated representative.

 These requirements have not been met here. Craig did not receive the letter addressed to her, and the other letter was neither addressed to Elmer C. Jackson, Jr., her designated representative, nor was its receipt personally acknowledged by him. Under these circumstances, the agency's attempts to notify Craig were insufficient to trigger the running of the statutory thirty-day limitation period.

Reversed and remanded for proceedings not inconsistent with this opinion.