Katherine DECKER, Plaintiff–Appellee,

v.

**ANHEUSER–BUSCH,**
Defendant–Appellant.

No. 78–3493.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1980.

John P. McAdams, Peter W. Zinober, Tampa, Fla., for defendant–appellant.

Judith Petersen, Dade City, Fla., for plaintiff–appellee.

Before RUBIN and POLITZ, Circuit Judges, and POINTER *, District Judge.

POLITZ, Circuit Judge:

The sole question presented on this appeal is whether an action under Title VII of the Civil Rights Act of 1964 is barred as untimely when it is filed 88 days after the plaintiff received the statutory right–to–sue notice from the Equal Employment Opportunity Commission (EEOC), but 91 days after that notice was received in the office of plaintiff's attorney.[1] The district court concluded that the filing was timely and denied defendant's motion to dismiss. De-

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. 42 U.S.C. § 2000e ·5(f)(1) provides in relevant part:

> If a charge filed with the [Equal Employment Opportunity] Commission pursuant to subsection (b) of this section is dismissed by the Commission or if within one hundred and

eighty days from the filing of such charge . . . the Commission has not filed a civil action . . . the Commission . . . *shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought* against the respondent named in the charge. . . . (Emphasis added.)

fendant's motion urging the district court to certify its order as appropriate for an interlocutory appeal under 28 U.S.C. § 1292(b) was considered, reconsidered and ultimately granted. We accepted the interlocutory appeal,[2] and we now reverse and render.

The salient facts are not controverted. Katherine Decker filed charges of discrimination against her employer, Anheuser–Busch. Conciliation efforts by the EEOC proved unsuccessful and on February 11, 1976, the EEOC mailed one copy of the right–to–sue notice to Decker at her home address and one copy to her in care of the attorney who had been representing her during the EEOC proceedings.[3] The letters were delivered to the attorney's office on February 12 and Decker's residence on February 15. The attorney filed the instant suit on May 13. The district court ruled that the suit was filed within the 90 days allowed by 42 U.S.C. § 2000e–5(f)(1), on the premise that the period commenced when the notice was delivered to Decker's residence. Delivery to the office of Decker's attorney was not considered to be the notice prescribed by the statute.

Does notice to the attorney–or, more precisely tailored to the facts of this case, delivery of notice to the attorney's office– trigger the running of the 90 day filing period? This specific question has not been addressed and answered by the Supreme Court or by this court. There is, however, a modicum of assistance and, if we read the signs correctly, faint portending of today's disposition in *Franks v. Bowman Transpor-* *tation Company,* 495 F.2d 398 (5th Cir. 1974), *rev'd and remanded on other grounds,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Mouriz v. Avondale Shipyards, Inc.,* 428 F.Supp. 1025 (E.D.La. 1977); and *Huckeby v. Frozen Food Express,* 555 F.2d 542 (5th Cir. 1977).

### Title VII Notice Cases

In *Franks* we said, in a bit of gratuitous dictum, that the filing period in a Title VII case begins to run when the notice actually reaches the complainant, *or his attorney.* Anheuser–Busch relies on this reference to the notice to counsel, but in *Franks* there was no attorney and, thus, no notice to an attorney. Also in dicta we disavowed the application of the constructive receipt doctrine, a cornerstone upon which Decker now seeks to erect the protective cover for her contention that notice to her attorney did not begin the accrual of the 90 days. The discussion of the constructive receipt doctrine in *Franks* must be viewed in the light of the facts of the case; the letter was received by Franks' 9 year old nephew who promptly lost it. There is a further material distinction. Decker received her notice letter three days after a copy was delivered to her attorney's office. The 90 days had just begun; she had plenty of time in which to act. In *Franks* the claimant was totally unaware of the letter or its contents, or of the period for filing suit, until almost a year later, long after the 90 day period had ended. This difference was considered material by the district judge, now a member of this court, when he distinguished *Franks* in the *Mouriz* case.

2. 28 U.S.C. § 1292(b) pertinently provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeal may . . . permit an appeal to be taken from such order. . . .

3. There is no question here of the existence or scope of the attorney client relationship, facts which are essential to our conclusion. The attorney had been representing Decker during the EEOC processing of the charges of discrimination with responsibility for both the administrative and judicial dimensions of the claim. A few days prior to the mailing of the right–to– sue letters the EEOC had requested that the attorney file a formal written notice of appearance. The attorney complied and, coincidentally, mailed the formal representation notice to EEOC on February 11, 1976, the very day that the EEOC mailed the right–to–sue notice. The communications apparently crossed in the mails.

In *Mouriz*, a Title VII claim was found untimely because it was filed more than 90 days after the notice letter was delivered to the residence of the complainant and received there by his wife. Mouriz insisted that the 90 days should not begin when the letter was delivered to his home but should begin when it came to his personal attention, and was read by him several days later. The court rejected this subjective, open—ended extension of the filing period and held that the time began when the letter was delivered to Mouriz's residence.

In *Huckeby* we stated that the right to bring a Title VII action was extinguished after the lapse of 90 days from the right–to–sue notification to the complainant's lawyer. The discussion in *Huckeby* is interesting, but again it is merely dictum, for the issue before the court was not whether the notice to the lawyer triggered the running of the 90 day period. The issue in *Huckeby* was whether, after the 90 day period had ended, one's complaint could be salvaged by intervening in another complainant's suit. We held that the court lacked jurisdiction to consider the appeal as no final judgment had been entered, and did not reach even the issue sought to be reviewed.

We are aware of other decisions under Title VII, particularly those applying 42 U.S.C. § 2000e–16, the section involving discrimination in federal employment. That section provides for a 30 day period for the filing of suit. Other circuits have held that this 30 day period is triggered by receipt of notice by the complainant, but not by the complainant's attorney. *See Rea v. Middendorf*, 587 F.2d 4 (6th Cir. 1978); *Craig v. Department of Health, Education and Welfare*, 581 F.2d 189 (8th Cir. 1978); and *Bell v. Brown*, 557 F.2d 849 (D.C.Cir.1977) (rationale relied upon by district judge as lending support to a similar interpretation of the section now before us). These cases were, however, primarily premised upon the principle that great deference should be given to the interpretations of statutory language by the Civil Service Commission, the agency charged with the administration of those provisions. Those interpretations

require the mailing of notice to both the claimant and any representative. These cases provide that the time for filing suit, subject to an exception sharply defined in *Craig*, commences upon the claimant's receipt of the notice.

Our analysis of the proper application of § 2000e–5(f)(1) is not aided by the interpretations of an expert agency. We must make our way through the thicket without the aid of administrative blazing.

### Notice to Attorneys Generally

■ There is nothing new, novel or unique about the concept that notice to a person's attorney constitutes notice to the person. At common law, one is deemed to know the facts known to one's attorney. As the Supreme Court observed in *Link v. Wabash Railroad Co.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962):

> Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer–agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955.

State and federal law, practices and procedures are replete with examples of the application of this concept. It is prudent, expedient and entirely consistent with the essence of the attorney–client relationship and the responsibilities assumed by the attorney. We see no reason to question the propriety of its application in the matter now before us.

■ As telegraphed by *Franks, Huckeby* and *Mouriz*, we now hold that for purposes of § 2000e–5(f)(1), notice to an attorney who is formally representing the complainant in an EEOC proceeding, constitutes notice to the complainant and begins the running of the 90 days allowed for the filing of suit. Whether the attorney is representing the complainant in the EEOC proceeding at the time of receipt of the notice is a critical fact which must be determined in each case. In the case at bar there is no question as to this active, continuing representation.

We further hold that the notice is effective from the time of its delivery to the attorney's office, without regard to when the attorney may have actually read the communication.

We recognize that the principle we now enunciate may be viewed as a variance from that set forth in *Franks*. We do not consider today's disposition to be a variant, but if it is, we believe it to be merited. Involved here are the professional responsibilities of the attorney and a long standing tradition that notice to or knowledge by the attorney is notice to or knowledge by the client. Unless and until there is a clear expression by the Congress to the contrary, these professional responsibilities, and this long standing tradition, must prevail and mark our result in cases of this kind.

■ The dissent takes exception to our holding, in part based on an interpretation of an E.E.O.C. regulation in effect at the time of the notices herein. We do not read the regulation quoted in dissent as mandating that the notice be received by Decker, personally, before the 90 day period commenced. We do not read the regulation as preventing notice to the aggrieved party by and through notice to the party's attorney of record. Nor do we agree that we effectively substitute a malpractice claim against counsel for the statutory right to relief. This criticism does not address the issue; under the dissent's reasoning had the suit been filed 72 hours later the exact same situation would appertain. Congress fixed a period of 90 days after the giving of notice for the filing of suit. Notice was given. Ninety days passed. Thereafter suit was filed. The filing was not timely.

The grant of the interlocutory appeal is affirmed. The decision of the district court on defendant's motion to dismiss is REVERSED, and the petition by Katherine Decker is DISMISSED as untimely filed.

REVERSED and RENDERED.

ALVIN B. RUBIN, Circuit Judge, dissenting.

Because my brethren read a patina onto the clear surface of a statute that I would leave untarnished, I respectfully dissent. The statute provides "the Commission ... shall so notify the person aggrieved." Then the ninety day period commences. 42 U.S.C. § 2000e–5(f)(1). The E.E.O.C. regulation in effect at the time that notice was mailed to Ms. Decker was even more detailed in specifying that the party must, herself, receive notice. It provides:

In any instance in which the Commission is unable to obtain voluntary compliance ..., *it shall so notify* the respondent, the *person filing a charge on behalf of the aggrieved person, the aggrieved person* or persons, and any state or local agency to which the charge has been previously deferred ....

39 Fed.Reg. 10,123 (1974) (emphasis added).[1] This clearly requires that the aggrieved person receive notice, even if counsel has been retained. The E.E.O.C.'s administrative interpretation is, of course, entitled to great deference. *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). This action was commenced within ninety days from the time the statutory notice was given to Ms. Decker. Nonetheless, my brethren hold that suit was untimely because her lawyer had received notice 91 days before the complaint was filed.

The notice of right to sue does not merely convey information. It sets a time limit for the filing of suit that we have held en banc to be jurisdictional in nature. *McArthur v. Southern Airways, Inc.*, 569 F.2d 276 (5th Cir. 1978) *but see* 569 F.2d at 278 (Rubin, J., dissenting); *see also Coke v. General Adjustment, Inc.*, 616 F.2d 785 (5th Cir. 1980) (*rehearing en banc granted*). The issue is not one of imputation of knowledge as a result of notice given an agent, even one who is an attorney at law. Nor is the

---

1. The current E.E.O.C. regulations no longer explicitly provide for notice to both counsel and the aggrieved party. *See* 29 C.F.R. § 1601.-28 (1980). This omission may have been part

of an attempt to make the regulation more concise. In any event, the present case is governed by the regulations in force at the time notice was given.

question one of normal incidents of the attorney–client relationship.[2] We are concerned with interpreting a statute remedial in nature. *See Franks v. Bowman Transportation Co.*, 495 F.2d 398, 404 (5th Cir. 1974). Not only does the majority opinion fail to give the statute a liberal interpretation, it fails even to read the words of the statute literally and, instead, construes them unfavorably to the class intended as the statute's beneficiaries.

The Equal Employment Opportunity Act neither expressly nor impliedly incorporates common law notice rules into its statutory mandate. "The primary concern" of Section 2000e–5 "must be the *protection* of the aggrieved person's option to seek a prompt remedy in the best manner available." H.R.Rep.No. 92–238, 92nd Cong., 2d Sess. 3, *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 2137, 2148 (emphasis added). The majority's decision runs counter to this mandate that we protect a claimant's right to bring suit in the absence of an explicit congressional directive to the contrary.

The Eighth Circuit has adopted a more sensible approach. In *Craig v. Department of Health, Education and Welfare*, 581 F.2d 189 (8th Cir. 1978), the claimant's attorney received notice more than ninety days before he filed suit; the claimant never actually received notice herself because her letter was lost in the mails. Citing the remedial purpose of the statute and regulations of the Civil Service Commission requiring that notice be sent directly to the aggrieved, the court held that notice to a representative would be sufficient only if the notice is "addressed in accordance with the specific directions of the employee" and the receipt is "acknowledged personally by the designated representative." 581 F.2d at 193. While *Craig* was decided under Sec-

tion 2000e–16(c), which governs complaints brought against the federal government, a recent district court case has applied the test to cases brought under Section 2000e–5(f)(1). *See Harris v. Ford Motor Co.*, 487 F.Supp. 429 (W.D.Mo.1980). Moreover, the shared remedial purpose compels the same interpretation.

We cannot resolve the issue on the basis that, because Ms. Decker's lawyer had 91 days notice and Ms. Decker had 89 days notice, Ms. Decker was not prejudiced. Anheuser–Busch was no more prejudiced by the filing of the suit one day late than Ms. Decker was prejudiced by the absence of personal notice. Admittedly, this case presents appealing facts for adopting a doctrine of constructive notice. A claimant who waits 89 days before filing her claim evokes less sympathy than a claimant who never receives notice and whose attorney misplaces or ignores the notice received. The doctrinaire rule adopted by the majority would prevent the claimant from maintaining suit in either case.

In effect, my brethren substitute a malpractice claim against counsel for the statutory right to relief. It is unlikely that Congress, in attempting to compensate for the "vast array of resources and legal talent" available to employers, H.R.Rep.No. 92–238, *supra*, at 3, [1972] U.S.Code Cong. & Admin.News at 2148, intended that such a swap be made. A malpractice claim is a paltry remedy; I would not thrust it on a claimant allegedly denied her statutory rights.[3]

---

2. The Federal Rules of Civil Procedure incorporate a special provision requiring all pleadings subsequent to the complaint to be filed on the attorney of a party represented by counsel. Rule 5(b), Fed.R.Civ.P. This is designed to expedite the trial process; it does not depend on imputation.

3. The employer is likely solvent; counsel may not be. Proof in a malpractice suit requires

proof both of negligence and of the likelihood of victory. *Williams v. Bashman*, 457 F.Supp. 322, 326 (E.D.Pa.1978). Thus, the claimant must prove two cases instead of one. Discovery against the employer as a party defendant is easier than discovery against it as a disinterested bystander to a client–attorney lawsuit.