744 F.2d 1309
 35 Fair Empl.Prac.Cas. 1711,
35 Empl. Prac. Dec. P 34,691
George R. JONES and Thomas J. Jackson, Individually and on
behalf of all others similarly situated,
Plaintiffs-Appellants,
v.
MADISON SERVICE CORPORATION and American Transit Corp.,
Defendants-Appellees.
 No. 83-2410.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 18, 1984.
Decided Oct. 2, 1984.
As Amended Oct. 3, 1984.
 
 Kenneth P. Casey, Madison, Wis., for plaintiffs-appellants.
 Barbara J. Swan, Brynelson, Herrick, Gehl & Bucaida, Madison, Wis., for defendants-appellees.
 Before PELL, CUDAHY and ESCHBACH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs appeal from the district court's grant of summary judgment for the defendants and its holding that this Title VII suit was not timely filed. The district court found that plaintiffs' employment discrimination action, brought pursuant to 42 U.S.C. Sec. 2000e et seq., had been filed 92 days after the receipt by their attorney of right-to-sue letters from the United States Equal Employment Opportunities Commission (EEOC). This was determined to be a violation of the 90-day period allowed by 42 U.S.C. Sec. 2000e-5(f)(1),[1] and the court held that the facts of the case did not warrant equitable tolling of the time period. Plaintiffs appeal, asserting that (1) receipt of a right-to-sue notice by the claimant, not a third party, is necessary before the 90-day period begins to run and (2) even if the time period was exceeded by two days, the facts in this case warrant equitable tolling.
 
 I.
 
 2
 Plaintiffs are non-whites who applied for jobs with the defendant bus company, the contract operator of the City of Madison municipal bus transportation system. They allege that they and other members of their class were discriminated against by being required to take a written test that had an unlawful disparate impact on non-white applicants. The plaintiffs applied for employment in the spring of 1979 and both were rejected when they failed to pass the written test then used by defendants. In the fall of 1979, each of the named plaintiffs filed complaints with the EEOC. Attorney Jeff Scott Olsen was retained to represent plaintiffs on their then-separate cases in the fall of 1980. At that time complaints had been filed with three agencies--the EEOC, the Madison Equal Opportunities Commission (MEOC) and the Wisconsin Equal Rights Division (ERD). Olsen notified all three agencies that he represented the plaintiffs.[2] Both MEOC and ERD issued initial determinations that there was probable cause to believe unlawful discrimination had occurred in both cases.
 
 
 3
 MEOC held hearings on plaintiff Jones' charges in the spring of 1981. Evidence presented at that hearing established that the written test did have a disparate impact on non-white applicants. The only defense asserted by defendants was that the hiring process as a whole did not have such an impact. This is characterized by Olsen as a "bottom line" defense. On November 24, 1981, MEOC issued its order on the Jones case. It found that the written test had had a disparate impact and rejected the "bottom line" defense of the bus company. The MEOC declined to recommend an award of back pay. Plaintiff Jackson's MEOC complaint had been dismissed on technical grounds earlier, and both plaintiffs had voluntarily withdrawn their cases from ERD on advice of counsel. Consequently after November 1981, the only viable actions remaining were those filed with EEOC.
 
 
 4
 Olsen contacted EEOC on several occasions requesting right-to-sue letters.[3] On January 21, 1982, EEOC issued right-to-sue letters in both cases. Original letters were sent by certified mail to plaintiffs at the addresses they had originally given EEOC. Those original letters were never received by the plaintiffs. As indicated on the bottom of the right-to-sue letters, copies were sent to Olsen at his office. The copies arrived at Olsen's office on January 25, 1982; they were sent by regular mail and did not bear the original signature of EEOC's Director. The following day, January 26, Olsen mailed to each plaintiff a copy of the EEOC letter and a letter over his own name informing the plaintiffs that any federal lawsuit would have to be filed "within 90 days of your receipt of those letters." Also on January 26, 1982, Olsen wrote Barbara J. Swan, counsel for defendants, informing her that the letter had been received and suggesting settlement discussions. Ms. Swan replied immediately, rejecting the offer to settle. Shortly thereafter, Olsen learned that his clients never received the original letters. Because Olsen wanted to wait as long as possible before filing,[4] he calculated the last day on which a federal law suit could be filed. According to his calculations, federal suit could be commenced on or before April 27, 1982. This date is 90 days from January 27, the earliest time the plaintiffs could have received the copies Olsen sent to them, but it is 92 days from the day Olsen received his copy of the letter from EEOC. The lawsuits were filed in district court on April 27, 1982.
 
 II.
 
 5
 The primary issue in this appeal is whether receipt of the carbon copy right-to-sue letters by Olsen constituted constructive receipt of those letters by the plaintiffs themselves. The district court held that it did, relying on Minor v. Lakeview Hospital, 421 F.Supp. 485 (E.D.Wis.1976), and Gonzalez v. Stanford Applied Engineering, 597 F.2d 1298 (9th Cir.1979). Plaintiffs contend that this court's decision in Archie v. Chicago Truck Drivers, Helpers and Warehouse Workers Union, 585 F.2d 210 (7th Cir.1978), compels an opposite conclusion.
 
 
 6
 In Archie, the claimant had filed a Title VII action 91 days after the right-to-sue letter was received at his home address by his wife; however, the action was commenced only 81 days after plaintiff personally received the letter from his wife. This court held that "the ninety-day period of limitation set forth in 42 U.S.C. Sec. 2000e-5(f)(1) begins to run on the date on which a claimant actually receives from the EEOC his notice of right-to-sue." 585 F.2d at 216.
 
 
 7
 The claimant in Archie was not represented by an attorney and the district court relied on that distinction in holding that Archie did not control the present case. The distinction is a valid one. As this court indicated in Archie, receipt of a right-to-sue letter by a third party, perhaps one unfamiliar with the situation or one who would not even read the letter, leads to the risk that a claimant could remain in ignorance of his rights until the time to sue had past. This danger is not present when the third party is the claimant's attorney, the individual in charge of proceeding with the litigation and aware, perhaps more aware than the claimant, of the importance of such notice. Consequently, the rule enunciated in Archie must be expanded to include this permissible instance of constructive receipt. We hold that the 90-day period of limitation set forth in 42 U.S.C. Sec. 2000e-5(f)(1) begins to run on the date that the EEOC right-to-sue notice is actually received either by the claimant or by the attorney representing him in the Title VII action.[5]
 
 III.
 
 8
 Since the experience of other courts has shown that a general statement of this nature is not totally sufficient, we need to consider further when and under what circumstances receipt of the right-to-sue letter by an attorney will be deemed receipt by the claimant. Toward this end, we will review the cases on which the district court relied and leading cases from other circuits.
 
 
 9
 In Gonzalez v. Stanford Applied Engineering, 597 F.2d 1298 (7th Cir.1979), EEOC sent a copy of the letter to the attorney by registered mail and accompanied by a letter to the attorney stating that suit could be commenced "within ninety days of the receipt of this letter." (Emphasis added). The suit was commenced 91 days after the attorney's receipt and it was dismissed as being untimely brought. That dismissal was affirmed by the Ninth Circuit, and the court noted that the attorney had requested the letter be sent to him on his client's behalf.
 
 
 10
 In Minor v. Lakeview Hospital, 421 F.Supp. 485 (D.C.Wis.1976), the attorney notified the EEOC that he had been retained and requested "all future correspondence to my client be served upon me directly at my office or that copies of each be mailed to me." Copies of the right-to-sue letter were sent to both the plaintiff and her attorney. The complaint stated that the plaintiff had received a letter on a certain date; that date was 91 days before suit was filed and the action was dismissed as untimely. The claimant argued that, despite the statement in the complaint, only the attorney had received the letter and that therefore the 90-day period had never begun to run. The court held that once the attorney requested the notice be sent to him, the claimant became bound by that notice. 421 F.Supp. at 486.
 
 
 11
 In Thomas v. KATV Channel 7, 692 F.2d 548 (8th Cir.1982), the claimant requested the right-to-sue letter in writing, and by phone she notified the EEOC of her change of address and that she was represented by counsel. The EEOC supervisor confirmed that representation by calling the attorney, and the attorney requested that a copy of the letter be sent to him. The right-to-sue letter was received by the attorney's office on July 16, 1981 and by the attorney himself on July 20. He wrote to the claimant, in much the same manner as Olsen wrote to plaintiffs here. The claimant received her right-to-sue letter by certified mail on July 27. Suit was filed 88 days after claimant received her letter but 99 days after the attorney's receipt. The district court dismissed on the authority of Decker v. Anheuser Busch, 632 F.2d 1221 (5th Cir.1980). In Decker, the Fifth Circuit had held that notice to an attorney who is "formally representing" a Title VII complainant constitutes notice to the complainant. Id. at 1223. However, Decker was later vacated and remanded, 670 F.2d 506 (5th Cir.1982) (en banc ), for an evidentiary hearing as to the scope and character of the alleged attorney-client relationship. On review, the Eighth Circuit declined to follow Decker and adopted for private employees the rationale of Craig v. Department of HEW, 581 F.2d 189 (8th Cir.1978), a case dealing with the Title VII provisions for federal employees. Under that rationale, receipt of the letter by an attorney can satisfy the statutory requirements when certain conditions are met. The Thomas decision noted two of those conditions: whether the letter is addressed in accordance with the specific directions of the claimant and whether the receipt is personally acknowledged by the designated representative. Thomas v. KATV Channel 7, 692 F.2d at 550.
 
 
 12
 Two additional approaches have been developed in other circuits to deal with this type of situation. One, mentioned above, is the Fifth Circuit's general rule stated in Decker v. Anheuser Busch, 632 F.2d at 1223, that a request by an attorney (or, presumably, the claimant) that the notice be sent to the attorney is binding on the claimant. The need for greater specificity is demonstrated by the subsequent remand in that case for an evidentiary hearing on the nature of the attorney-client relationship. 670 F.2d 506. Another approach, which covers all instances of third-party receipt, is that taken by the Eleventh Circuit and discussed most fully in Lewis v. Conners Steel Company, 673 F.2d 1240 (11th Cir.1982) (per curiam). This approach essentially involves looking at whether the delay in bringing suit was the "fault" of the claimant. As noted later, this approach requires determining the issue on a case-by-case basis. Bell v. Eagle Motor Lines, Inc., 693 F.2d 1086 (11th Cir.1982).[6]
 
 
 13
 We believe that the most crucial concept in this matter, and a concept that determined many of these decisions, including Archie, is the actual knowledge that the time period in which a suit can be filed has commenced. Such knowledge is conveyed equally well through personal receipt of the right-to-sue letter by the claimant and through receipt of that letter by the attorney representing him in the action. The problems which have been encountered elsewhere revolve around questions as to whether, and when, the letter was received and whether an attorney who received the letter did in fact represent the claimant and therefore have an obligation to take action or at least inform the claimant of developments. As the cases above illustrate, the specific fact situations will vary considerably, and there will undoubtedly be times when the courts will have to inquire into those fact situations to determine if there was actual, binding knowledge.
 
 
 14
 With the importance of this consideration in mind, we hold that the 90-day period commences when the attorney receives the letter as long as the following facts are undisputed:
 
 
 15
 1. the attorney did in fact represent the claimant at the time the letter was received,
 
 
 16
 2. the EEOC was notified of that representation by either the claimant or the attorney,
 
 
 17
 3. the attorney did in fact receive the letter, and
 
 
 18
 4. the date on which the letter was received.
 
 
 19
 If any of these facts are in dispute, there must be an evidentiary hearing to inquire into the specific circumstances of the case. The question to be determined at such a hearing is when the claimant or someone authorized to act on his behalf first received actual notice that the right-to-sue letter had been issued by the EEOC.
 
 
 20
 Applying this rule to the facts of the case before us, we find that none of the factors listed are in dispute. Attorney Olsen was actively representing the claimants in their Title VII actions and had informed the EEOC of that fact. He personally received the right-to-sue letters on January 25, 1983. The action was not commenced until April 27, 92 days later, and consequently it was untimely.
 
 IV.
 
 21
 The 90-day period of limitations in Title VII actions may be equitably tolled when circumstances warrant. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). However, equitable tolling is to be restricted and reserved only for situations in which the claimant has made a good faith error (e.g., brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time. Smith v. American President Lines, Ltd., 571 F.2d 102, 109 (2d Cir.1978). See also Wolfolk v. Rivera, 729 F.2d 1114 (7th Cir.1984).
 
 
 22
 The reason for the delay in this case was characterized by the district court as "[t]he desire to wait until the last day possible" (see footnote 4), and the court ruled that such a reason "simply does not suffice." We agree.
 
 
 23
 For the reasons stated, the ruling of the district court is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Section 2000e-5(f)(1) provides in part:
 If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission ... the Commission shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved ....
 
 
 [2]
 The notices from Olsen to the EEOC read as follows:
 This is to advise you that we have been retained to represent George Jones in the above-referenced matter. We ask that you keep us advised of all developments and that any contacts you wish to make with our client be made through our office. We have been retained by Thomas J. Jackson to represent him in the above-referenced matter. Please provide us with copies of any and all information which your agency maintains in its files concerning the above matter and keep us advised of all developments.
 
 
 [3]
 The requests from Olsen to EEOC are as follows:
 Re: Thomas Jackson
 June 2, 1981
 On November 24, 1980, we wrote you to request copies of your file. We received no response to this request. Please send us a copy of the file and a Notice of Right to Sue.
 June 9, 1981
 I have retained the law firm of Julian & Olsen, S.C., to represent me in connection with my pending charge against the Madison Metro Bus Company.
 Re: George R. Jones
 June 29, 1981
 We are writing to request a Right to Sue letter in this case. We hope that this case can be kept in tandem with the Jackson case because we anticipate filing a single lawsuit in these matters since they both arise out of the same written examination which has been shown to have a disparate impact upon black applicants for employment as bus drivers in Madison.
 Re: Jackson and Jones
 December 1, 1981
 We confirm our standing request for Right-to-Sue letters in these cases.
 
 
 [4]
 Olsen had recommended that his clients wait until the last possible date to commence their federal action because he hoped that the United States Supreme Court would render a decision in the appeal of Teal v. Connecticut, 645 F.2d 133 (2d Cir.1981). The Second Circuit had rejected the so-called "bottom line" defense in an employment discrimination case similar to the plaintiffs'. The Supreme Court granted certiorari in October, 1981. 454 U.S. 813, 102 S.Ct. 89, 70 L.Ed.2d 82 (1981). Olsen concluded, and informed his clients, that their chances of winning would be poor if the Supreme Court reversed the Second Circuit's holding. He advised that an adverse ruling in Connecticut v. Teal could cause their own actions to be deemed frivolous and possibly subject them to penalties of attorney's fees and litigation costs. Consequently, it was decided that the suits would be filed on the last date possible, or earlier if the Supreme Court affirmed in Connecticut v. Teal. Plans for federal suit would be dropped if the Supreme Court reversed in that case before the last day for filing. The Supreme Court ultimately handed down its decision in Connecticut v. Teal, 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982) on June 21, 1982, affirming the Second Circuit by a five to four margin
 
 
 [5]
 As a general rule, our holding means that the 90-day period will begin to run as soon as an EEOC right-to-sue letter is first received, whether it is received by the claimant or by his attorney. Because this case does not involve simultaneous or nearly-simultaneous receipt by both the claimant and his attorney, we do not decide all issues which might arise in application of this rule. For example, we do not address the situation in which an original notice arrives shortly after a carbon copy has been received by either claimant or his attorney
 
 
 [6]
 The "fault" approach may be appropriate in situations where neither Archie nor this case apply. In another decision issued by this court today, St. Louis v. Alverno College, 744 F.2d 1314 (7th Cir.1984), we use this approach to determine that when a claimant fails to notify the EEOC of his correct address, the 90-day limit begins to run on the date the notice is delivered to the most recent address provided by the claimant