Opal TERRY and Juanita Leftwich,
Plaintiffs-Appellants,

v.

BRIDGEPORT BRASS COMPANY

and

Local 4266, United Steelworkers of America, Defendants-Appellees.

No. 74–1953.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1975.

Decided July 21, 1975.

Ronald E. Elberger, Indianapolis, Ind., for plaintiffs-appellants.

Charles L. Whistler, Indianapolis, Ind., William H. Schmelling, Pittsburgh, Pa., Keith C. Reese, Indianapolis, Ind., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, BAUER, Circuit Judge, and EAST,* Senior District Judge.

* Senior District Judge William G. East of the District of Oregon is sitting by designation.

**CASTLE, Senior Circuit Judge.**

In January, 1970, plaintiffs Opal Terry and Juanita Leftwich, female employees of defendant Bridgeport Brass Company, went on layoff when the Company shut down Department 359 of the plant. In March, 1970, the plaintiffs declined recall to other jobs available at the Company. Under the collective bargaining agreement in effect, their refusal to accept recall resulted in loss of all seniority, and effectively terminated their employment with the Company.

On February 5, 1971, the plaintiffs individually filed complaints with the Equal Employment Opportunity Commission charging that they were discouraged from accepting available plant jobs because of their sex. After conciliation efforts failed and a right to sue notice issued, a complaint [1] was filed on October 17, 1972 in the district court alleging sex discrimination on the part of the Company and defendant Local 4266, United Steelworkers of America, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

The Company and Union defended on the ground that the district court lacked jurisdiction because none of the plaintiffs' charges had been filed with the EEOC within ninety days after the alleged unlawful employment practices occurred as then required by 42 U.S.C. § 2000e–5(d).[2] After a two day trial on this jurisdictional issue only, the district court entered findings of fact and conclusions of law, and dismissed the complaint for lack of subject matter jurisdiction, concluding that all the plaintiffs had not timely filed their charges within the ninety-day time limitation of § 2000e–5(d).

Only plaintiffs Terry and Leftwich have appealed from the dismissal. On appeal, they do not challenge the fact that filing a timely charge with the EEOC is a jurisdictional prerequisite to maintaining an action in the district court. *Choate v. Caterpillar Tractor Co.,* 402 F.2d 357, 359 (7th Cir. 1968).[3] Although the alleged discriminatory practices charged in their EEOC complaint occurred at the times of the January layoff and the March recall, the plaintiffs argue that the delay until February 5, 1971 in filing their charges was justifiable because they were misled as to the consequences of refusing to accept recall by assurances that if Department 359 reopened they would be employed in that Department regardless of whether or not they refused the initial recall. They contend therefore, that the ninety-day period did not begin to run until they discovered the effect of the misrepresentations.[4]

■ The district court found that "the preponderance of the evidence is that plaintiffs specifically understood, at or before the time of recall, that their failure to accept a return to work resulted in loss of seniority and termination of employment." Despite the plaintiffs'

---

1. Other female employees had also filed charges with the EEOC, and in addition to Terry and Leftwich, were also named plaintiffs in the complaint.

2. In 1972, amendments to Title VII extended the time limit for the filing of charges with the EEOC to 180 days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e–5(e).

3. Plaintiffs Terry and Leftwich failed to name the Union in their EEOC complaints, and in oral argument before us plaintiffs' counsel conceded that this fact also deprived the district court of jurisdiction over the Union, although the district court's dismissal did not rest on that consideration. *See Williams v. General Foods Corp.,* 492 F.2d 399, 404 (7th Cir. 1974). We note that the plaintiffs' EEOC charges did not allege any discriminatory acts on the part of the Union, and in fact, the plaintiffs did not have any contact with the Union until long after their refusal to accept recall. Consequently, we are only concerned with the conduct of the Company.

4. Department 359 reopened with a limited work force in May, 1970, and closed again in the fall of 1971. The plaintiffs discovered this fact on October 12, 1970, still more than ninety days before they filed their charges with the EEOC. Since we find that the district court was correct in concluding that the plaintiffs understood the effect of refusing recall, it is unnecessary to decide whether this additional delay from October to February was justifiable.

contentions, the record shows that the consequences of refusing recall were explicitly explained at a January 12, 1970 meeting with the female employees concerning the shutdown of Department 359.[5] Although plaintiffs assert that they were assured of recall to that Department if it reopened, there was evidence that no such statement was made, but rather, that it was simply an assumption by the employees that it would be reasonable for the Company to hire experienced workers. Further, the evidence shows that at the time of recall both plaintiffs were offered and refused the job of saw operator which was then filled by another female employee who had been on layoff. This job offer and subsequent acceptance by another female employee also belies the plaintiffs' claim that they were misled because they were assured of returning to work in Department 359. There is sufficient evidence to support the district court's finding and it is not clearly erroneous. Fed.R.Civ.P. 52(a); *Indiana State Employees Association, Inc. v. Negley*, 501 F.2d 1239 (7th Cir. 1974).

The plaintiffs were therefore aware that their refusal to accept recall in March would lead to termination of employment. If they believed that their termination was the result of unlawful discriminatory practices, then a charge was required to be filed within ninety days of that termination. Although the plaintiffs contend that the ninety-day limitation period is no bar because the discrimination is continuing in nature, that is not the case once employment has ended. As stated in *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1234 (8th Cir. 1975) (en banc):

> The rationale underlying the allowance of actions for continuing discrimination is to provide a remedy for past actions which operate to discriminate

against the complainant at the present time. *Marquez v. Omaha District Sales Office*, 440 F.2d 1157, 1160 (8th Cir. 1971). *See* Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1210–12 (1971). Termination of employment either through discharge or resignation is not a "continuing" violation. It puts at rest the employment discrimination because the individual is no longer an employee.

As we noted in *Richard [Richard v. McDonnell Douglas Corp.*, 469 F.2d 1249 (8 Cir. 1972)]*, to construe loosely "continuing" discrimination would undermine the theory underlying the statute of limitations. While the continuing discrimination theory may be available to present employees, *cf. Griggs v. Duke Power Co.*, 401 U.S. 424, 429–30, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), even though on layoff, *Cox v. United States Gypsum Co.*, 409 F.2d 289 (7th Cir. 1969); *Sciaffra v. Oxford Paper Co.*, 310 F.Supp. 891 (D.Me. 1970), we do not think this theory has validity when asserted by a former employee. For such a former employee the date of discharge or resignation is the controlling date under the statute, and a charge of employment discrimination must be timely filed in relation to that date.

*See also Collins v. United Airlines, Inc.*, 514 F.2d 594 (9th Cir., 1975).

The plaintiffs filed their charges with the EEOC approximately eleven months after their employment ended in March. The district court therefore correctly concluded that the charges were untimely filed and that it consequently lacked jurisdiction. The judgment of the district court is

Affirmed.

---

5. Plaintiff Leftwich was not at the meeting because she was on sick leave. There is no indication, however, that when she returned to the plant in February, 1970 she was given any different information regarding the layoff and recall than those who had attended the meeting.