**Zinaida BRUDNE, Plaintiff,**

v.

**AMALGAMATED TRUST & SAVINGS BANK, Defendant.**

No. 84 C 4077.

United States District Court, N.D. Illinois, E.D.

Jan. 21, 1986.

---

**2.** This argument is superfluous in view of our finding that Do-It Fluid breached the no action clause. We will, nevertheless, dispose of the plaintiffs' last argument.

Lawrence Cohen, Martin K. Denis, Robert S. Letchinger, Fox and Grove, Chicago, Ill., for plaintiff.

Thomas J. McCracken, Jr., McCracken & Walsh, Andrew J. Maxwell, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Zinaida Brudne ("Brudne") has filed an eight-count First Amended Complaint (the "Complaint") against Amalgamated Trust

& Savings Bank ("Bank"), charging in the six currently-asserted counts:[1]

1. employment discrimination motivated by Brudne's religion and national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (Count I);

2. race-motivated employment discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") (Count II);

3. age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (Count III);

4. discharge in retaliation for filing a claim under the Illinois Workers' Compensation Act (the "Compensation Act"), Ill.Rev.Stat. ch. 48, ¶¶ 138.1-138.30 (Count IV);

5. defamation (Count VI); and

6. refusal to pay wages in violation of the Illinois Wage Payment and Collection Act, Ill.Rev.Stat. ch. 48, ¶¶ 39m-1 to 39m-16 (Count VIII).

Bank has moved under Fed.R.Civ.P. ("Rule") 56 for summary judgment against Brudne.[2] For the reasons stated in this memorandum opinion and order, that motion is granted in part and denied in part.

### Facts

For purposes of the motion as to Counts I, III, IV and VI,[3] the relevant facts are few. In July 1976 Brudne, a 62–year-old Russian-Jewish woman, began working for Bank as a file clerk in its bookkeeping department. On August 23, 1982 Bank fired Brudne. On July 11, 1983 [4] Brudne filed a discrimination charge (D.Ex. A) with the Equal Employment Opportunity Commission ("EEOC"). EEOC issued a right-to-sue letter February 14, 1984. On May 11, 1984 Brudne filed this suit pro se against Amalgamated.

To avoid repetition, the facts separately relevant to Count IV alone will be dealt with in the discussion of that count. As for Count VI, the only added fact that bears on the defamation claim is that on July 9, 1984 court-appointed counsel filed the Complaint on Brudne's behalf, asserting such a claim for the first time.

### ADEA's 300–day Filing Period

ADEA § 626(d) requires a complainant to file an age discrimination charge with EEOC:

1. within 180 days, or

2. in deferral states—states that have established their own agencies to remedy discrimination claims [5]—within 300 days,

after the allegedly discriminatory act. Absent special circumstances, a timely administrative filing constitutes a prerequisite to

---

**1.** Brudne Mem. 2 n. 2 indicates Brudne does not oppose Bank's summary judgment motion on Counts V and VII.

**2.** Bank moved for summary judgment on all of Brudne's claims. From the parties' voluminous submissions it seemed plain that the merits (or lack of merit) of various of Brudne's claims were heavily fact-bound, though limitations might have barred some of those claims. This Court therefore called on both parties to file supplemental briefs to address the issue of whether timely EEOC charges supported Brudne's Title VII claim (Count I) and ADEA claim (Count III).

**3.** No dispute exists as to the facts stated in this section of this opinion. As for the other contested counts, however, Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.

1984). For that purpose this Court must view the evidence in the light most favorable to the nonmovant—here Brudne. *Hermes v. Hein*, 742 F.2d 350, 353 (7th Cir.1984). As the brief discussion at the end of this opinion reflects, such a viewing forecloses summary judgment on those other counts.

**4.** Some confusion exists as to exactly when Brudne filed her EEOC charge. Burtner Aff. ¶¶ 3-3 states Brudne filed her charge June 29, 1983. But Complaint ¶ 5 and the charge itself (D.Ex. A) indicate a July 28, 1983 filing date. Nonetheless both Brudne Supp.Mem. 4 and Bank Supp.Mem. 2 seem to adopt July 11, 1983 as the effective filing date, and this opinion will therefore accept that version. Nothing turns on that, however, because the timeliness problems discussed in the text would remain whichever of the three dates referred to in this note is correct.

**5.** Illinois is a deferral state; see 29 C.F.R. § 1626.9(b).

maintaining an ADEA suit in federal court. *Kennedy v. Whitehurst,* 690 F.2d 951, 961 (D.C.Cir.1982).

Brudne delayed her EEOC filing until July 11, 1983—322 days after she was discharged. That filing fell outside ADEA § 626(d)'s 300–day limitation period. Hence Bank argues Brudne cannot include an age discrimination claim in this lawsuit.[6]

### Title VII's 180–day Filing Period

Title VII § 2000e–5(e) sets up a dual timetable for the filing of charges similar to that contained in ADEA § 626(d). Though that section first speaks of a 180–day limitation, it goes on to establish an extended filing period in deferral states such as Illinois:

> [I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred....

Again absent special circumstances, no plaintiff who has failed to file a timely EEOC charge can maintain a Title VII suit. *Martinez v. United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1373,* 772 F.2d 348, 350 (7th Cir.1985).

This Court recently concluded in *Proffit v. Keycom Electronic Publishing,* 625 F.Supp. 400, 404–407 (N.D.Ill.1985) that Title VII—unlike ADEA—requires a complainant to initiate timely state proceedings in order to obtain the extended 300–day federal filing period. But the *Proffit* hold-

ing is not necessary to this case, because the 322–day gap between Bank's allegedly discriminatory firing and Brudne's EEOC filing exceeds both the basic 180–day filing period and the extended 300–day limitation period established by Title VII § 2000e–5(e). Bank therefore contends Brudne cannot assert a Title VII claim in this lawsuit either.

### Brudne's ADEA and Title VII Contentions

Brudne counters Bank's ADEA and Title VII limitations claims with three arguments:

1. Bank engaged in a continuous course of discrimination against Brudne. That continuity postponed the commencement of the limitations time clock.

2. Bank's misrepresentations to Brudne as to the reasons for her discharge should toll the limitations period.

3. Bank's failure to post a notice informing its employees of their rights under ADEA and Title VII equitably tolled the limitations period.

Those contentions will be dealt with in turn.

### 1. "Continuing Violation" Theory

■ Brudne claims Bank engaged in a continuous course of misconduct against her. Hence she says the events—both before and including her August 23, 1982 discharge—that underlie her ADEA and Title VII claims are not time-barred under a "continuing violation" theory.

In that respect, Brudne first charges Bank maintained pervasive discriminatory policies directed against Russian-Jewish persons and against employees over 40 years old. Brudne asserts the systematic nature of those discriminatory policies ren-

---

**6.** Bank R.Mem. 3 originally asserted ADEA §§ 626(d) and 633(b) required Brudne to file her discrimination charge with the Illinois Department of Human Rights ("IDHR") within Illinois' 180–day limitation period (see Ill.Rev.Stat. ch. 68, ¶ 7–102(A)(1)). Bank argued Brudne's failure to initiate timely state proceedings precluded application of ADEA's extended 300–day

filing period. But *Anderson v. Illinois Tool Works, Inc.,* 753 F.2d 622, 626 (7th Cir.1985) recently concluded otherwise:

> [T]he timeliness of [an ADEA] plaintiff's state charge is irrelevant to whether he gets the extended 300–day federal charge-filing period....

Bank Supp.Mem 2 acknowledges that rule.

ders Bank's actions towards Brudne a "continuing violation."

*Stewart v. CPC International, Inc.*, 679 F.2d 117, 121 (7th Cir.1982) (emphasis in original, citations omitted) points out the fundamental flaw in that position:

> In the third situation, the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy.... In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts.... The present case falls into this category. Stewart's contention is that CPC covertly discriminated against him on the basis of his race, and that the discrimination is evidenced by a series of discrete acts—the successive rejections of his applications for the training program.

> Although [*United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)] does not speak directly to this brand of continuing-violation theory, the Supreme Court's emphasis upon the need to show a present violation of Title VII indicates that an employer may be held liable for a continuing practice of discrimination *if* the plaintiff can demonstrate that the practice has actually continued into the "present"—that is, into the time period relevant to the date the charge of discrimination was filed. At least one discriminatory act must have occurred within the charge-filing period. Discriminatory acts that occurred prior to this period constitute relevant evidence of a continuing practice, and may help to demonstrate the employer's discriminatory intent; and they will of course be used to determine the extent of the remedy that is in order.... But the prior discrimina-

tory acts do not come into play at all unless the plaintiff can show in the first place that the discrimination is "presently" continuing.

Even assuming arguendo that Bank maintained (or maintains) discriminatory policies adversely affecting Russian-Jewish and over-forty employees, by definition those policies ceased to affect Brudne when Bank fired her in August 1982.[7] Bank's allegedly discriminatory act *against Brudne* —her firing—occurred too long before the EEOC charge. Brudne's allegations of systematic policies of discrimination against a group of which she was a member cannot circumvent the requirement of pointing to at least one discriminatory act *affecting her* within the limitations period.

■ Brudne next claims a series of discriminatory acts *did* occur within the limitations period:

1. Dr. Haskell—Brudne's treating physician—sent letters to Bank on August 24, 1982 (P.Mem.Ex. I) and September 16, 1982 (P.Mem.Ex. W). Brudne says those letters constituted applications for reemployment, and Bank's failure to respond to those letters amounted to a discriminatory refusal to rehire.

2. Brudne Second Aff. ¶ 12–15 says she called Bank and asked to be rehired on November 15 or 16, 1982. Again Brudne claims Bank's nonresponse was a discriminatory refusal to rehire.

3. Brudne Supp. Answers 168–73 state Bank gave a discriminatory job reference to NAEL Services, Inc. in March 1983.

Although the August 1982 letter falls outside the 300–day limitations period, each of the remaining incidents—the September 1982 letter, the November 1982 phone call and the March 1983 job reference—would be within it.[8] Only the March job refer-

---

7. That text statement would be inaccurate if (for example) post-firing events continued to injure Brudne. But that possibility too is negated by the text discussion that follows.

8. Because the September 16, 1982 letter was written on the 299th day before Brudne's July 11, 1983 EEOC charge, Bank's inaction in re-

sponse to it necessarily fell within the 300–day period. If Brudne actually placed the alleged November 15 or 16, 1982 phone call, that would have been 238 or 239 days before the EEOC filing. Bank's March 1983 job reference occurred no later than 132 days before the EEOC filing.

ence, however, meets Title VII's 180–day filing deadline under *Proffit*, at 404–407.

Brudne's "continuing violation" notion based on those events must fail as well. Each event is itself insufficient, and three times zero is still zero.

First, there is no rational predicate for labeling Dr. Haskell's September 1982 letter to Bank (P.Mem.Ex. W) an employment application by Brudne. Dr. Haskell wrote in response to Bank's request for information verifying his treatment of Brudne (Haskell Aff. ¶ 7). Although Dr. Haskell stated Brudne was "capable of returning to work," the context of that statement was simply as a part of Dr. Haskell's diagnosis. There is no hint that Brudne was applying (or wanted to apply) for a new job with Bank. Indeed the letter does not even indicate Dr. Haskell knew of Brudne's discharge.

Second, even accepting as factual Brudne's November phone request for a job, and treating Bank's alleged inaction as a discriminatory refusal to rehire Brudne,[9] that would represent a new and discrete act of discrimination. *Caldwell v. National Association of Home Builders*, 771 F.2d 1051, 1055–56 (7th Cir.1985) (footnote and citations omitted) teaches a refusal to rehire does not resurrect a prior discriminatory discharge:[10]

> Admittedly Caldwell cannot claim that his termination in the fall is a part of a continuing violation. This doctrine requires a present violation, not just the effects of a past violation.... The hiring decisions in the spring, although necessary because of the reorganization and discharges announced the previous fall, are independent of the NAHB's decision to terminate Caldwell. An employer's terminating an employee, unlike the em-

ployer's failure to hire or to promote, is a completed act; that its consequences linger does not indicate that the discrimination itself is continuing.... Caldwell should have filed two EEOC charges, one in the fall of 1981 and one after the NAHB failed to rehire him.

Third, the *Caldwell* rationale applies with equal force to Bank's allegedly discriminatory job referral in March 1983. That incident, like the alleged refusal to rehire, is an independent act separately triggering a new limitation period. Neither transforms Bank's earlier discriminatory act into a "continuing" violation. As *Garcia v. Rush Presbyterian-St. Luke's Medical Center*, 80 F.R.D. 254, 262 (N.D. Ill.1978) properly held:

> Thus, while acts which were not the basis of the EEOC charges may be relevant as background [for] the timely claims, they may not themselves constitute the basis for imposition of liability.

Any other result would virtually emasculate the limitations period, for a potential plaintiff could always circumvent the limitations period and dredge up outlawed claims by reapplying for work. Brudne's attempt to establish a continuing violation by relying on discrete post-discharge events must be rejected.[11]

### 2. Equitable Tolling of the Limitations Period

*Zipes v. TWA*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (footnote omitted) corrected the lower courts' earlier treatment of untimely filing with EEOC as a jurisdictional flaw:

> [F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limita-

---

9. Bank denies those events ever occurred.

10. Although *Caldwell* arose under ADEA, the doctrinal treatment would be identical under Title VII. See *Mamos v. School Committee of Town of Wakefield*, 553 F.Supp. 989, 993 (D.Mass.1983); *cf. Terry v. Bridgeport Brass Co.,* 519 F.2d 806, 808 (7th Cir.1975) (discharge from employment not a continuing violation).

11. Neither side has addressed still another problem with Brudne's reliance on post-discharge acts: Brudne never filed an EEOC charge based on those acts. *See Herman v. NBC,* 744 F.2d 604, 606 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985).

tions, is subject to waiver, estoppel, and equitable tolling.

Brudne invokes the equitable tolling concept in two ways.

*(a) Bank's Alleged Misrepresentations*

Brudne first claims Bank lied to her about the true reasons for her discharge. She says that misrepresentation justifies tolling the limitations period. She is wrong on the facts *and* the law.

Brudne Second Aff. ¶ 23 states:

> 23.   Amalgamated gave one set of reasons to me in its August 23, 1982 letter to justify my termination, but in June 1983 I learned for the first time that Amalgamated fired me for other discriminatory and false reasons, *i.e.*, that I was discharged because I was an unreliable employee, was absent for unexcused and invalid medical reasons, and that my absence reasons were fabricated and not bona fide.

And Brudne Second Aff. ¶¶ 24–25 similarly asserts Bank's original justification was false at the outset.

But Bank's August 23, 1982 letter (P.Mem.Ex. J) in fact identified reasons for Brudne's discharge of the same stripe as those she describes in her Second Aff. ¶ 23:

> In view of the warning given to you in Mr. Monahan's letter of January 28, 1982; your failure to cooperate with the Bank during your leave (refusal to be X-rayed, failure to call me after our August 11 conversation, and failure to provide the requested letter from Dr. Haskell); the fact that the insurance company doctor released you to work while you continue to claim Dr. Haskell will not release you to work; and our information that you have not seen Dr. Haskell since the date of your alleged injury, you are terminated, effective immediately.

Brudne cannot claim she did not suspect discrimination until she learned Bank's second set of reasons, where the first justifications were of the same type and—according to Brudne—equally false. Nothing in Bank's August 1982 letter "painted a picture so distorted of the ground for [Brudne's] dismissal that the merits of the potential claim remained obscure for a considerable length of time." *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 309 (3d Cir. 1983). Accordingly Brudne cannot argue Bank's actions deceived her into overlooking her rights.

Brudne also says Bank's failure to acknowledge her attempts to reapply for work "deceived me as to the finality of my discharge" (Brudne Second Aff. ¶ 22). But Bank's August 1982 letter clearly stated:

> [Y]ou are terminated, effective immediately.

Brudne's hope that Bank might rehire her at some later date does not present a legally sufficient reason to toll the period for filing with EEOC. *Caldwell*, 771 F.2d at 1056 n. 1.[12]

*(b) Failure To Post Informational Notices*

■   Brudne characterizes her Second Aff. ¶ 27 as a showing that Bank failed to post the informational notices required by both ADEA § 627 and Title VII § 2000e–10. Such a failure would toll the limitations period. *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir. 1978).

Bank retorts that it always posted those notices (Gannon Aff. ¶¶ 7–11). That detailed factual assertion, complying as it does with Rule 56(e), necessarily prevails over Brudne's mere statement that she never *saw* the posted notices. Her statement neither equates with nor really supports, in evidentiary terms, her conclusory

---

**12.**   Brudne Aff. ¶ 18 asserts Bank deceived her as to her chances of future employment at Bank. But Brudne Second Aff. ¶ 15 simply states:

> I relied on Amalgamated's representation on November 15 or 16, 1982 that Amalgamated had not made a decision to hire and/or rehire me. . . .

Bank's alleged representation it would consider Brudne for a future position does not toll the limitations period. *Lawson v. Burlington Industries, Inc.*, 683 F.2d 862, 864 (4th Cir.), *cert. denied*, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982).

statement that Bank did not in fact conspicuously post the notices.

For Rule 56 purposes Bank's showing that it did post the notices thus stands uncontradicted. Brudne's contrary claim cannot and does not toll the limitations period.[13]

### Retaliatory Discharge

■ As already stated, Complaint Count IV alleges Bank fired Brudne in retaliation for her having exercised rights under the Compensation Act. Bank says that claim cannot stand because:

1. Brudne did not even file a workers' compensation claim until almost a year after she was fired, and that sequence conclusively negates retaliation as a motive for the firing.

2. In any event, Bank says it discharged Brudne because of her chronic absenteeism—not because she claimed workers' compensation.

True enough, Brudne did not file a claim with the Illinois Industrial Commission (the "Commission") until June 29, 1983—long after her August 1982 discharge (Bank R.Mem.Ex. 10). But the Commission claim date is really not controlling. Immediately after her June 8, 1982 injury Brudne had attempted to collect compensation benefits from Bank's compensation insurance carrier (Bank Mem.Ex. U–V).

Compensation Act § 138.4(a) authorizes an employer to insure against its liability to pay workers' compensation, while Compensation Act § 138.4(h) prohibits any interference by the employer with an employee's exercise of *any* rights under the statute. That clearly embraces retaliatory conduct, and the prohibition must apply with as much force to an employee's attempt to collect a claim from the employer's insurance carrier as to an application for benefits filed with the Commission. Bank's first argument is wholly without merit.

As to the reason for Brudne's firing, she retorts:

1. Other employees have also exhibited excessive absenteeism but have not been fired (Brudne Mem.Ex. O–Q).

2. Retaliation may be inferred from the timing of Brudne's discharge—two months after her claim to the insurer for benefits.

Those matters raise a factual issue as to whether Bank's claimed reason for firing Brudne is pretextual. Such a factual dispute blocks summary judgment on Count IV.

### Defamation

■ Complaint Count VI sets out a cause of action for defamation. Bank correctly urges that claim, like the ADEA and Title VII claims, is barred by limitations.

Ill.Rev.Stat. ch. 110, ¶ 13–201 establishes a one-year limitations period for defamation actions. That period begins to run on the date of publication of the defamatory material. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 61 Ill.2d 129, 131–32, 334 N.E.2d 160, 161 (1975).

Brudne grounds her defamation claim on Bank's statement Brudne was "malingering and lying" (Partee Dep. 123). Partee—a Bank employee—made such a statement during conversations she had with an insurance agent, two union agents and Bank's attorney on August 16, 1982 (Partee Dep. 123, 125–26)—well over a year before the July 9, 1984 filing of the Com-

---

**13.** That renders irrelevant Bank's alternative contention that Brudne acquired actual knowledge of her rights more than 300 days before she filed her EEOC charge. As to that matter, Brudne Second Aff. ¶ 26 states:

26. Until I talked to the EEOC's intake clerk in June 1983, I lacked actual and/or constructive knowledge of Title VII and the ADEA and the filing procedures under those statutes.

Even though that too is conclusory in nature, there is really no other way to prove a negative. Hence Brudne's statement would create a factual issue on the extent of her actual knowledge, were that the controlling issue. But as the text reflects, Bank's posting of notices created the constructive notice that moots the actual-notice question.

plaint.[14] Brudne has offered no admissible evidence to establish a publication date later than August 1982.[15] Complaint Count VI consequently falls outside Illinois' one-year limitations period and must be dismissed.

### Other Counts

■ Bank is obviously angry and frustrated at having to devote time and expense to what it views as a wholly frivolous complaint. For one thing, it urges the Russian-Jewish derivation of its principal owners and management (who are also persons who fall within the age range protected by ADEA) renders it ludicrous that they would discriminate on those grounds against a person (one among several) to whom they feel they have reached out to provide employment opportunities.[16] For another, Bank obviously believes the decision to terminate Brudne was entirely just on the merits—in its view the real defense to the now-dismissed defamation claim is that the charges of Brudne's "malingering and lying" are not only true but an understatement.[17]

But on a summary judgment motion courts deal not with probabilities of success, but rather with mere possibilities. Counsels' paper blizzard makes plain there are factual issues on Brudne's charges, and that is enough to defeat a Rule 56 motion. This Court should not, however, be misunderstood as expressing any value judgment on Brudne's likelihood of success. If at trial her claims prove as empty as Bank

asserts, the potential of liability on her part under 42 U.S.C. § 1988 and Rule 11 remains open.

### Conclusion

There is no genuine issue of material fact, and Bank is entitled to a judgment as a matter of law, as to Counts I, III, V, VI and VII. Those claims are dismissed. As to Brudne's remaining claims, disputed factual issues preclude summary judgment. Bank's motion is denied to that extent.

---

**14.** Brudne had not asserted a comparable claim in her original pro se complaint, filed May 11, 1984.

**15.** Brudne's Response to Bank's Interrogatory No. 5 (Bank R.Mem.Ex. 12) identifies the date of Bank's statements as:

In approximately August 1982 and at various times thereafter.

But once again Brudne seeks to counter facts with an unsupported conclusion. Rule 56(e) renders her "at various times thereafter" statement a nullity in evidentiary terms.

**16.** Bank Mem. 14 says:

The Plaintiff's Complaint is groundless and frivolous, but more than that, it is an insult to a Bank that has gone out of its way to provide

aid and employment to a whole plethora of minorities including Russian Jews.

**17.** Bank Mem. 14 also says:

In language that the Plaintiff clearly understands, it takes pure "chutzapah" [sic—should be "chutzpah"] for an individual with a personnel record as dismal as hers to claim that she was terminated for any reason other than chronic absenteeism.

In Bank's perspective Brudne is much like the apocryphal applicant for a radio announcer's job who, after disclosing an unfortunate but pronounced stutter throughout his audition reading of a test script, shouts at the station manager who has declined to hire him:

Ant-t-t-ti-s-s-sem-m-m-mite!