**William H. HARDING, Plaintiff,**

v.

**FORT WAYNE FOUNDRY/PONTIAC DIVISION, INC., Defendant.**

**Civil No. 1:95cv189.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 29, 1996.

Order on Motion to Alter or
Amend March 13, 1996.

Patrick L. Proctor, Warsco and Brogan, Fort Wayne, IN, for William H. Harding.

William H. Harding, Fort Wayne, IN, pro se.

J. Michael O'Hara, Anthony M. Stites, Barrett and McNagny, Fort Wayne, IN, for Fort Wayne Foundry/Pontiac Division, Inc.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on a motion for summary judgment filed by the defendant on December 13, 1995. The parties completed briefing the motion on January 16, 1996. For the following reasons, the motion for summary judgment will be granted.

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file," together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind. 1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.*, 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.CT. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

### Discussion

On September 23, 1992, the plaintiff, William H. Harding ("Harding"), was terminated from his employment at Fort Wayne Foundry/Pontiac Division, Inc. ("Foundry"). On October 13, 1992, Harding filed a Charge of Discrimination ("Charge") against the Foundry alleging that he had been the victim of racial harassment and discrimination. This Charge was filed with the Fort Wayne Metropolitan Humans Relations Commission ("Metro"), and Harding listed his address on the Charge as 4524 Jason Drive, Fort Wayne, Indiana 46835.

After filing his Charge with Metro, Harding experienced a succession of personal crises. Harding was unable to locate permanent employment and experienced financial difficulties, leading to the loss of his car and

the eviction of his family (Harding had a wife and three children) from its home on Jason Drive. After the eviction, Harding and his family moved into the Fort Wayne Rescue Mission, 301 Superior St., Fort Wayne, Indiana. Shortly thereafter, Harding's wife took the children and moved in with her parents. Harding continued to live at the Fort Wayne Rescue Mission until he was arrested by the Fort Wayne Police Department on or about February 18, 1994. While Harding was in jail, his wife filed for divorce.

Harding was released from the Department of Corrections on or about August 6, 1994, and he again began living at the Fort Wayne Rescue Mission. On or about September 6, 1994, Harding left the Rescue Mission and stayed at a half-way house, Trinity House of Hope, 3028 Bowser St., Fort Wayne, Indiana. Later, on March 1, 1995, Harding began living at 1215 Emily Street, Fort Wayne, Indiana.

Meanwhile, Mr. Lee E. May, on behalf of Metro, was in the process of investigating Harding's claim against the Foundry. After completing his investigation, Mr. May filed a report and recommendation with Metro's Probable Cause Panel, and on November 10, 1993, the Panel issued a decision that there was probable cause to credit Harding's complaint. After the Panel issued its decision, Samuel L. Bolinger ("Bolinger"), a Metro staff attorney, made several attempts to contact Harding by certified mail and inform him of the decision. A certified letter was mailed to Harding at his Jason Drive address on February 17, 1994. On or about March 16, 1994, this letter was returned to Metro with a notification of a new address: Harding % Calvery, 1315 Hanna St, Fort Wayne, Indiana 46803–3546. On March 17, 1994, Metro sent another certified letter to Harding at the Hanna Street address. However this letter was returned with the notation that the service was: "Attempted—Not Known". On April 6, 1994, Metro mailed a certified letter to Harding in care of the True Love Baptist Church, 715 E. Wallace Street, Fort Wayne, Indiana. This letter was also returned to Metro. On June 23, 1994, the

Panel dismissed Harding's Charge as constructive withdrawal.

In late August or early September 1994, Harding went to Bolinger's office to inquire about the status of his case. At this time, Harding informed Bolinger that he had been incarcerated and was unaware that the Panel had dismissed his Charge. Harding informed Bolinger that he should send all correspondence to the True Love Baptist Church, 715 E. Wallace, Fort Wayne, Indiana. At this time, Bolinger advised Harding that he needed to obtain a Right to Sue letter from the EEOC and also informed Harding that he should consider retaining counsel [1]. Bolinger recommended several Fort Wayne attorneys, including Chris Meyers.

After speaking with Bolinger, Harding went to Chris Meyers' office and spoke with Meyers' paralegal. The paralegal told Harding that he needed to provide them with documents from Metro. Thus, on the same day, Harding went back to Metro and Bolinger gave Harding an envelope containing documents. Harding then took the documents to Meyers' office and the paralegal told Harding that they would review the documents and investigate Harding's case. Harding believed that Meyers had agreed to take his case.

Over the next four months, Harding repeatedly contacted Meyers' office, both in person and by phone. Each time, he was told that they were still investigating his case. Concerned about the delay, Harding consulted another attorney, Robert Love. Love referred Harding to yet another attorney, Quinton Ellis, a former Metro staff attorney. After calling Meyers' office once more and being informed that they were concerned with the timing of his case, Harding consulted with Ellis who told him that the EEOC had to give him a Right to Sue letter. According to Harding, this was the first time that he had ever heard of a Right to Sue letter [2]. Harding went back to Metro and spoke with Bolinger again. Bolinger

1. Bolinger Aff. at ¶¶ 12, 13.

2. Harding Aff. at ¶ 37.

then explained to Harding how to write to the EEOC and obtain his Right to Sue letter.

Immediately after Bolinger told Harding how to obtain his Right to Sue letter, Harding wrote a letter to the EEOC requesting a new Right to Sue letter. Later, in May or June of 1995, Harding called the EEOC to inquire about his Right to Sue letter. At this time, the EEOC informed Harding that his Right to Sue letter had been sent to Hanna Street, and that the post office had returned the letter to the EEOC[3]. Harding asked the EEOC why they were sending his mail to Hanna Street (as he had never lived there) and gave them his current Emily Street address. Finally, Harding received his Right to Sue letter from the EEOC on or about June 7, 1995. On July 7, 1995, Harding filed his *pro se* complaint against the Foundry.

The Foundry has filed a motion for summary judgment on the ground that Harding did not file his complaint within 90 days after September 14, 1994, the date of the EEOC Right to Sue letter that was mailed to Harding at his Jason Drive address. The Foundry points out that the Jason Drive address is the only address Harding had ever provided the EEOC prior to the sending of the Right to Sue letter on September 14, 1994. The Foundry argues that Harding was required to inform the EEOC of any change in his address, as noted in a letter the EEOC sent to Harding, dated October 22, 1992. This letter states in pertinent part:

> Our regulations require that you notify us of any change in address and deep us informed of any prolonged absence from your current address. Your cooperation in this matter is essential.

For purposes of this motion, the Foundry does not dispute Harding's claim that he did not receive the Right to Sue letter until June 12, 1995. The Foundry simply takes the position that since Harding failed to keep the EEOC apprised of his address changes, it is his fault that he did not receive his Right to Sue letter in a timely fashion.

The Foundry relies on *St. Louis v. Alverno College*, 744 F.2d 1314 (7th Cir.1984) in support of its position. In *St. Louis*, the Seventh Circuit Court of Appeals held that the 90–day time limit on filing employment discrimination suit begins on date that Right to Sue notice is delivered to the most recent address plaintiff had provided to the EEOC, even though plaintiff did not receive actual notice until several months later because he had moved without notifying the EEOC, and even though plaintiff's new address appeared on two state administrative documents contained in the EEOC file. *Id.* at 1316–17.

In response, Harding cites to *Archie v. Chicago Truck Drivers Union*, 585 F.2d 210 (7th Cir.1978), and *Jones v. Madison Service Corp.*, 744 F.2d 1309 (7th Cir.1984). In *Archie*, which dealt with the doctrine of constructive receipt, the Seventh Circuit declined to condition a claimants right to sue "on fortuitous circumstances or events beyond his control which are not spelled out in the statute." 585 F.2d at 215, *citing Franks v. Bowman Transportation Company*, 495 F.2d 398 (5th Cir.1974), *rev'd on other grounds*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Thus, the Seventh Circuit explicitly held that the 90–day limitations period "begins to run on the date on which a claimant actually receives from the EEOC his notice of right-to-sue." 585 F.2d at 216.

In *Jones*, another constructive receipt case, the Seventh Circuit held that the 90–day limitations period begins to run on the date that the EEOC Right to Sue letter is actually received either by the claimant or b the attorney representing him in the action. 744 F.2d at 1312.

---

3. The EEOC case log indicates that the Right to Sue letter was sent to Harding's old Jason Drive address on September 14, 1994. After receiving Harding's request for his Right to Sue letter in April of 1995, the EEOC again mailed the Right to Sue letter to Harding's old Jason Drive address, as Harding had not informed the EEOC that he had a new address. On May 11, 1995, the Right to Sue letter was returned to the EEOC with a label indicating that Harding's new address was 1315 Hanna Street. Thus, on May 15, 1995, the EEOC mailed the Right to Sue letter to Hanna Street. When Harding called the EEOC on May 17, 1995, he finally gave them his Emily Street address. Thus, on June 6, 1995, after receiving the Right to Sue letter back from the post office, the EEOC re-mailed the Right to Sue letter to Harding at his Emily Street address. Harding finally received his Right to Sue letter on June 7, 1995.

■ As a result of *Archie* and its progeny, the courts in the Seventh Circuit have developed a three prong test for determining when the 90–day period begins to run: (1) when the letter is received at the claimant's address by someone other than the claimant, the 90–day period begins to run upon actual receipt of the letter by the claimant; (2) when the claimant is represented by counsel who receives the letter, the filing period begins to run from the day the attorney actually receives the letter; and (3) in other cases the court will adopt a "fault approach", where the statutory period begins to run upon some type of fault on the part of the claimant. *Bond v. American Medical Ass'n,* 764 F.Supp. 122, 124 (N.D.Ill.1991); *Tyler v. United Parcel Service, Inc.,* 1987 WL 19553 (N.D.Ill. Nov. 5, 1987); *Trinkle v. Bell Litho, Inc.,* 627 F.Supp. 764 (N.D.Ill.1986).

In the present case neither the first or second prong is applicable. Thus, this court must determine whether the delay in receiving the Right to Sue letter was due to Harding's own fault. The Seventh Circuit, in *St. Louis,* has indicated that failure to inform the EEOC of a new address is considered negligence on the part of the claimant. Harding, however, insists that the rule stated in *St. Louis* should not be applied in an inflexible manner when doing so would lead to a harsh and unjust result in this case and in future cases involving similar facts. Harding admits that *St. Louis* held that the failure of a claimant to notify the EEOC of a change of address constitutes negligence. However, Harding suggests that such negligence is not fatal if the claimant can establish a reasonable justification for having failed to notify the EEOC of the change of address. Alternatively, Harding submits that under the facts and circumstances of this case, the limitations period should be equitably tolled. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 396–97, 102 S.CT. 1127, 1134, 71 L.Ed.2d 234 (1982); *Ortiz v. Clarence H. Hackett, Inc.,* 581 F.Supp. 1258 (1984).

Harding points out that he gave Metro a new address at least a week before the EEOC issued its Right to Sue letter. Harding claims that it was reasonable for him to rely on Metro to forward the address to the EEOC. Harding further points out that for several months he was homeless and was living at the Rescue Mission and, therefore, did not actually have an address. Harding also claims that his series of personal crises justified his delay in notifying Metro of his current address. Additionally, Harding states in his response brief that "there is no indication in the record that Plaintiff even understood the distinction between METRO and the EEOC at that time...."

The Foundry, however, argues that Harding has not shown justification for failure to inform the EEOC of his address. The Foundry points out that Harding had an address, the Trinity House of Hope, at the time the Right to Sue letter was sent. Additionally, Harding had an address during the time he was incarcerated. Although Harding claims that he did not have Metro's address while he was in jail (and thus could not inform them of his incarceration), Harding has not indicated that he ever attempted to find the address of Metro (or of the EEOC), by requesting a telephone book or dialing Directory Assistance.

Likewise, the Foundry asserts that Harding's implication that he did not understand the distinction between Metro and the EEOC is not supported by the record. Even though Harding has filed an affidavit in this case, he has not stated in that affidavit that he did not understand the distinction between the EEOC and Metro. Additionally, the record clearly shows that Harding had received correspondence from the EEOC as early as October 22, 1992. This letter implicitly noted the distinction between the EEOC and Metro by plainly stating that the EEOC would not take action until Metro had issued a final order, and thus Harding was encouraged to cooperate with Metro. The EEOC letter also clearly explained that Harding was required to keep the EEOC informed of any address changes or prolonged absences from his current address. Under these circumstances, this court cannot accept Harding's unsupported assertion that he did not understand that he had to inform the EEOC, and not just Metro, of his change of address.

■ This court also notes that in *St. Louis,* even though the plaintiff had not in-

formed the EEOC of his change of address, the EEOC had the information anyway as the EEOC file contained two documents from the state administrative proceedings which contained plaintiff's new address. 744 F.2d at 1315–16. Nevertheless, the Seventh Circuit upheld the district court's finding that the plaintiff was responsible for informing the EEOC of his current address and that the delay in filing his action resulted from his own negligence. The Seventh Circuit stated:

> The burden of providing the EEOC with changes of address is minimal. It is unreasonable to expect the EEOC to pore over its files, and those of state administrative agencies, in an effort to ascertain which of the addresses contained therein is correct. We would then undoubtedly hear cases in which the EEOC had made a good-faith effort to find a claimant's current address but had guessed wrong and sent the notice to the wrong place. The claimant is obviously in a far better position to ensure that the Commission has current, accurate information and to provide that information in much less time than it would take an EEOC employee to go through the claimant's file.

744 F.2d at 1316–17.

Clearly, under the Seventh Circuit's holding in *St. Louis,* Harding's failure to provide the EEOC with a current address is not excusable. Moreover, this is not a case in which equitable tolling is appropriate. Although Harding endured several personal crises during the relevant time period, the record simply does not suggest that Harding was incapable of performing the simple, routine task of informing pertinent persons and entities of his address changes. At the least, Harding could have taken the rudimentary step of filling out a change of address form and mailing it to the post office. Notifying the post office and others of a change of address is a basic part of everyday life and Harding, who was at least 30 years old during the relevant time period, has failed to convince this court that he should somehow

be excused from performing this routine task.

### Conclusion

For all of the foregoing reasons, the defendant's motion for summary judgment is hereby GRANTED.

## ORDER ON MOTION TO ALTER OR AMEND

This matter is before the court on a motion to alter or amend judgment filed by the plaintiff, William H. Harding ("Harding"), on February 7, 1996.[1] The parties completed briefing the motion on February 23, 1995. For the following reasons, the motion to alter or amend will be denied.

### Discussion

On January 29, 1996, this court entered an order granting the motion of the defendant, Fort Wayne Foundry Corporation/Pontiac Facility ("Foundry"), for summary judgment. In its order of January 29, 1996, this court found that Harding had failed to file his complaint within 90 days after the date the Equal Employment Opportunity Commission ("EEOC") sent him his Right to Sue notice and, accordingly, his Title VII claim against the Foundry was time barred.

Harding now claims that this court has committed a manifest error of law. Specifically, Harding claims that this court failed to recognize that the Fort Wayne Metropolitan Human Relations Commission ("Metro") was acting as the agent of the EEOC and, therefore, Harding's notice of his new address to Metro served as notice to the EEOC as a matter of law. Harding does not dispute that he failed to give notice of his new address to the EEOC. Nevertheless, Harding argues that it is undisputed that he had given his new address to Metro at least a week before the EEOC issued its Right to Sue notice and Metro, as the EEOC's agent, had actual or apparent authority to accept notice of a change of address for the EEOC. Thus, Harding concludes that as a matter of agency

---

1. On this same date, Harding filed a request for a hearing on his motion to alter or amend. This court has reviewed the briefs and has concluded that a hearing will not be necessary. Accordingly, Harding's request for a hearing is denied.

law, his notification to Metro constituted notice to the EEOC.

 The parties do not dispute that it is a well-known principle of law that notice given to an agent, acting within the scope of its authority, is imputed to the agent's principal, regardless of whether the principal had actual knowledge of the notice. *See, Curtis C. & H. Co. v. United States,* 262 U.S. 215, 221–23, 43 S.Ct. 570, 572, 67 L.Ed. 956, 959 (1923); *Shenandoah Valley Poultry Co. v. Armour and Co.,* 854 F.2d 1013 (7th Cir. 1988). The parties also do not dispute that 29 C.F.R. § 1601.13 provides that the EEOC may designate a state or local agency (such as Metro) as its agent for purposes of receiving the charge.

Harding acknowledges that the present case does not involve the filing of a charge with Metro but, rather, involves the filing of a notice of change of address with Metro. Nevertheless, Harding argues that Metro had either actual or apparent authority to accept the notice of change of address on behalf of the EEOC.

In support of his position, Harding makes reference to the work share agreement between the EEOC and Metro which states that the EEOC and Metro "each designate the other as its agent for the purpose of receiving and drafting charges" and that each agency "will process all Title VII, ADA, and ADEA charges that they originally receive." Harding also emphasizes that the work share agreement states that Metro and the EEOC "shall make available for inspection and copying to appropriate officials from the other Agency any information which may assist each Agency in carrying out its responsibilities."

In the present case, the EEOC delegated to Metro its responsibility to investigate Harding's claim and to make a probable cause determination. However, the EEOC retained the right to perform a substantial weight review and to issue the Right to Sue notice. Therefore, Harding claims that Metro had the responsibility of providing his change of address to the EEOC so that the EEOC could properly perform its function of issuing the Right to Sue notice. Harding further argues that, as a matter of law, Metro was acting as the EEOC's agent for purposes of processing Harding's charge, and that the scope of Metro's agency authority included the authority to collect, compile, and forward information (including information regarding Harding's new address) to the EEOC.

In response, the Foundry points out that Harding has not submitted any authority in support of his argument that an agency relationship exists between the EEOC and Metro the scope of which exceeds the purpose of receiving and drafting charges. The Foundry argues that Harding cannot point to any supporting authority because no such authority exists as the work share agreement does not contain any further authorization.

The Foundry acknowledges that the work share agreement provides that Metro and the EEOC "shall make available for inspection and copying to appropriate officials from the other Agency any information which may assist each Agency in carrying out its responsibilities." The Foundry argues that the quoted language only imposes upon Metro the responsibility to make information available and does not impose a duty to transmit information. The Foundry argues that the work share agreement does not contain an affirmative obligation on the part of Metro to transmit information to the EEOC continually. Similarly, with respect to Harding's contention that Metro had the authority to collect, compile, and forward information to the EEOC, the Foundry argues that even if Metro had that authority, authority is not duty. The Foundry concludes that there was not an affirmative duty on the part of Metro to transmit Harding's change of address, and thus this court's order of January 29, 1996 is correct.

It is clear to this court that the scope of Metro's agency was very limited and did not include the duty to transmit change of address notices to the EEOC. Although Metro had the authority to forward information to the EEOC, and was required to make requested information available, Metro did not have a duty to forward Harding's address to the EEOC. Rather, the EEOC specifically informed Harding that it was *his* duty to

keep the EEOC informed of his whereabouts.

Harding also argues that even if Metro did not have actual authority to accept notice of his change of address on behalf of the EEOC, Metro had the apparent authority to accept the address, and thus Harding was not at fault in failing to contact the EEOC directly. In support of his argument, Harding points out that throughout the entire charge process he only dealt with Metro. Harding filed his original charge with Metro and Metro conducted the complete investigation of his claim and entered the determination of probable cause. When Metro was compelled to dismiss Harding's suit, it automatically sent its findings to the EEOC which simply adopted the findings and issued a Right to Sue notice. Harding argues that it is clear that, from his perspective, Metro was acting as the agent for the EEOC and had the apparent authority to accept Harding's notice of his change of address and had the responsibility of forwarding Harding's change of address to the EEOC.

■ As the Foundry has pointed out, Harding has not cited any case law in support of his position that an apparent authority agency relationship existed between Metro and the EEOC. The Foundry asserts that Harding has defeated his own claim by his acknowledgment that he dealt only with Metro and not the EEOC. More specifically, the Foundry argues that an agent cannot create (or expand) an agency relationship based on the agent's sole acts. Rather, for an apparent authority agency relationship to exist, there must be a "communication, direct or indirect, by the principal to the third party instilling a reasonable belief in the mind of the third party of such agency relationship. Statements or manifestations made by one agent are insufficient to create an apparent agency relationship." *Jarvis Drilling, Inc. v. Midwest Oil Producing Co.*, 626 N.E.2d 821, 826 (Ind.Ct.App.1993).

The Foundry further argues that the only instance where an apparent authority agency relationship could have been created is in an October 22, 1992 letter to Harding from the EEOC, in which the EEOC instructed Har-

ding that he should inform the EEOC of any change of address:

> Our regulations require that you notify us of any change in address and keep us informed of any prolonged absence from your current address. Your cooperation in this matter is essential.

The Foundry contends that there is simply no way that this notice could be construed as an act by the EEOC creating a reasonable belief that Metro would accept and subsequently transmit an address change notification. The Foundry further contends that Metro's actions and representations, even a statement that Metro would forward an address change to the EEOC, cannot create the apparent authority to bind a principal (the EEOC) which never made any statements or took any steps to create such a false impression. *See, e.g., Restatement (Second) of Agency* §§ 27, 49 cmt. c, 125 cmt. a (noting that the creation and termination of apparent authority rests with the principal).

■ This court agrees with the Foundry and finds that the evidence conclusively shows that an apparent authority agency relationship did not exist between Metro and the EEOC.

Finally, Harding argues that "if the Court had properly found that Plaintiff did not have actual knowledge of his duty to notify the EEOC directly, the Court should have ruled against Defendant on its motion." In support of this argument, Harding cites to *Jones v. Madison Service Corp.*, 744 F.2d 1309 (7th Cir.1984), in which the Seventh Circuit held that receipt by the plaintiffs' attorney of the Right to Sue notice constituted constructive receipt by the plaintiffs.

This court first notes that in its order of January 29, 1996, it declined to accept Harding's assertion that he did not understand the distinction between Metro and the EEOC because Harding had failed to support the assertion. Even though Harding filed an affidavit in opposition to the Foundry's motion for summary judgment, Harding did not state in his affidavit that he did not understand the distinction between Metro and the EEOC.

In any event, even if this court had found that Harding had implicitly shown that he did not understand the distinction between the two entities, Harding is still not excused from his obligation to inform the EEOC of his address changes. *Jones* simply does not support Harding's claim as *Jones* only held that receipt by an attorney of a Right to Sue notice constituted constructive receipt by the plaintiffs. In fact, *Jones* specifically made reference to *St. Louis v. Alverno College*, 744 F.2d 1314 (7th Cir.1984), in which the Court held that "when a claimant failed to notify the EEOC of his correct address, the 90–day limit begins to run on the date the notice is delivered to the most recent address provided by the claimant." *Id.* at 1313 n. 6.

Harding has made an attempt to distinguish *St. Louis* on the basis that in *St. Louis*, the plaintiff had filed his Charge of Discrimination with the EEOC rather than with the state agency. Harding further points out that in *St. Louis*, the plaintiff's move to another state was voluntary. From this, Harding claims that the holding in *St. Louis* is inapplicable to his case because it was clear that the plaintiff in *St. Louis* knew the distinction between the EEOC and the local agency, yet the plaintiff voluntary moved without notifying the EEOC.

However, it is clear that Harding had actual knowledge that he was required to keep his address changes on file with the EEOC. Harding has never disputed that he received the letter from the EEOC. Harding now apparently claims that he did not read, understand, or remember the letter. However, the notice was explicitly clear and the EEOC's return address was on the envelope. Additionally, this court cannot accept Harding's implication that his changes of address were involuntary. As the Foundry notes, there is simply no evidence before the court that would tend to show that Harding's misfortunes were not, in some measure, Harding's fault.

Harding contends that this court's ruling on this issue will have broad ramifications throughout employment discrimination law. While this court's ruling may seem harsh to Harding, it is important to remember that Harding could have most likely prevented the delay in receiving his Right to Sue notice if he had only acted more responsibly and submitted a completed change of address form to the post office. The record in this case shows that Metro and the EEOC both took steps to locate Harding's whereabouts. Metro made three attempts to contact Harding by certified mail to inform Harding of its finding of probable cause. When the letter was returned to Metro with a notification of a new address, Metro remailed the letter to the new address. Even when the letter was returned with a notation that a forwarding address had not been provided, Metro still attempted to locate Harding by sending the letter to Harding in care of his church. However, this letter was also returned.

Likewise, when the EEOC's Right to Sue notice was returned to them the EEOC remailed the notice to the address indicated on the label that the post office had attached to the notice. Clearly, in this case, if Harding had simply kept a current address on file with the post office, he would have received his Right to Sue notice in a timely fashion, as it was the practice of the EEOC to remail notices to the address indicated on the return label.

*Conclusion*

For all of the foregoing reasons, Harding's motion to alter or amend is hereby DENIED. Further, Harding's request for a hearing is also hereby DENIED.